BETTER GOVERNMENT
ASSOCIATION,
Appellant,

v.

DEPARTMENT OF STATE, et al.

NATIONAL WILDLIFE FEDERATION,
et al., Appellants,

v.

UNITED STATES DEPARTMENT OF
INTERIOR, et al.

Nos. 84–5723, 84–5928.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 19, 1985.
Decided Jan. 3, 1986.

---

Eric R. Glitzenstein, with whom Alan B. Morrison and Cornish F. Hitchcock, Washington, D.C., were on brief, for appellant in No. 84–5723.

John Bonine, Eugene, Or., for appellant in No. 84–5928. Michael Axline, Eugene, Or., was on brief, for appellant in No. 84–5928.

Deborah Ruth Kant, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees in Nos. 84–5723 and 84–5928.

Before WRIGHT and EDWARDS, Circuit Judges, and DAVIS,* Circuit Judge, United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Concurring opinion filed by Circuit Judge J. SKELLY WRIGHT.

HARRY T. EDWARDS, Circuit Judge.

In these consolidated cases, the appellants, the Better Government Association ("BGA") and the National Wildlife Federation ("NWF"), challenge the validity of a set of guidelines promulgated by the Department of Justice ("DOJ"). These guidelines are utilized by the appellees, the Department of State ("State") and the Department of the Interior ("Interior"),[1] to determine whether an individual or organization requesting information under the Freedom of Information Act[2] ("FOIA") is entitled to a waiver of search and copying fees. NWF also takes exception to Interior's utilization of an allegedly illegal regulation governing its treatment of FOIA fee waiver requests,[3] and its failure to adopt regulations, allegedly mandated by FOIA, setting forth specific criteria to be applied in fee waiver decisions.

Both BGA and NWF incurred administrative denials of FOIA fee waiver requests pursuant to the guidelines and regulation at issue, and then challenged their respective denials in District Court. In each case, the Government[4] reversed its position after the complaints were filed, waived the fees in question, and filed a motion for summary judgment on the grounds that the claims involving the individual denials of the fee waiver requests were moot and that the challenges to the facial validity of the DOJ guidelines and the Interior regulation were not ripe. The District Court agreed with the Government and held that the claims in question were not justiciable.

We disagree. Although the challenges to the guidelines and the regulation as applied to the particular fee waiver requests are indisputably moot, it is equally clear that the appellants' claims that the DOJ guidelines and the Interior regulation are facially invalid survive. The critical question is whether the facial challenges are ripe at this time. We hold that the crucial prerequisites to ripeness—final agency action, purely legal questions, and hardship if review is withheld—are present in the instant case. Therefore, we remand these cases to the District Court for consideration on the merits.

## I. BACKGROUND

### A. The Statutory and Regulatory Framework

FOIA permits agencies to impose "reasonable standard charges for document

---

* Sitting by designation pursuant to Title 28 U.S.C. § 291(a).

1. The Northern Plains Resources Council is an appellant, and the Bureau of Land Management, an appellee, in *National Wildlife Federation, et al. v. United States Department of Interior, et al.* For convenience, we will refer only to the NWF and Interior throughout this opinion.

2. 5 U.S.C. § 552(a) (1982).

3. 43 C.F.R. § 2.19(c) (1985).

4. The appellee departments occasionally will be referred to as "the Government."

search and duplication" to recover the direct costs of such services. The statute also provides that:

> Documents *shall* be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public.[5]

The legislative history of the fee waiver provision reveals that it was added to FOIA "in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests," in particular those from journalists, scholars and nonprofit public interest groups.[6] In 1980, however, after some experience with the fee waiver provision, a congressional subcommittee concluded that "[m]ost agencies have ... been too restrictive with regard to granting fee waivers for the indigent, news media, scholars" and, therefore, recommended that the DOJ develop guidelines to deal with these problems.[7]

On December 18, 1980, the DOJ's Office of Information Law and Policy promulgated a set of such guidelines under the rubric "Interim Fee Waiver Policy." In January, 1983, however, the DOJ's Office of Legal Policy issued a new memorandum that superseded the interim guidelines. The 1983 memorandum sets forth the DOJ's twofold commitment "to encouraging agencies to waive FOIA search and duplication fees where the disclosure of requested information will primarily benefit the general public," and to "the preservation of public funds where there will be insufficient public benefit derived from disclosure."[8] It then lists five general factors[9] that agencies should consider in determining whether to grant a fee waiver.

At all times relevant to this case, State had in effect regulations governing the granting of FOIA fee waivers[10] that were adopted pursuant to a notice and comment rulemaking.[11] State has admitted, however, that it "utilizes [the DOJ] guidelines in resolving requests for fee waivers."[12] Interior, too, has in effect a regulation pertaining to the granting of fee waivers.[13] However, Interior also employs the DOJ guidelines in its fee waiver determinations.[14] Most importantly, the record re-

---

5. 5 U.S.C. § 552(a)(4)(A) (1982) (emphasis supplied).

6. *See Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D.Mass.1984); SEN. COMM. ON THE JUDICIARY, AMENDING THE FOIA, S.REP. No. 854, 93rd Cong., 2d Sess. 11–12 (1974), U.S.Code Cong. & Admin. News 1974, p. 6267 (hereinafter S.REP.).

7. SUBCOMMITTEE ON ADMINISTRATIVE PRACTICE AND PROCEDURE OF THE SENATE JUDICIARY COMMITTEE, 95TH CONG., 2D SESS., AGENCY IMPLEMENTATION OF THE 1974 AMENDMENTS TO THE FREEDOM OF INFORMATION ACT: REPORT ON OVERSIGHT HEARINGS 90–96 (Comm.Print 1980) (hereinafter SUBCOMM. REPORT).

8. BGA Joint Appendix ("J.A.") 23.

9. Under the 1983 DOJ memorandum, the agency must evaluate:

(1) "whether there is a genuine public interest in the subject matter of the documents ... There is no universal formula by which the existence and extent of legitimate public interest in the subject matter of FOIA requests can be evaluated, so each agency must draw on its unique expertise in making these judgments about the subject matter of its own records. The 'public' to be benefited need not be so broad as to encompass all citizens, but it must be distinct from the requester alone;"

(2) "the value to the public of the records themselves ... [T]he public is benefited only if the information released meaningfully contributes to the public development or understanding of the subject;"

(3) "whether the requested information is already available in the public domain;"

(4) "a requester's identity and qualifications;" and

(5) "any personal interest of the requester reasonably expected to be benefited by disclosure ... It is necessary to assess the magnitude of any such personal interest, and then to compare it with that of any discernable public benefit...."

BGA J.A. 23.

10. *See* 22 C.F.R. § 171.13(e) (1985).

11. *See* 45 Fed.Reg. 58,108 (1980).

12. Defendant's Answer, ¶ 8, *reprinted in* BGA J.A. 19.

13. *See* 43 C.F.R. § 2.19(c) (1985).

14. NWF J.A. 21.

veals that both departments explicitly relied on the DOJ guidelines in their denials of the BGA and NWF waiver requests involved in this appeal and will continue to employ them in processing FOIA fee waiver requests in the future.

### B. *Procedural History*

BGA is a nonprofit organization that conducts investigations designed to expose waste, fraud and abuse in the functioning of government programs. In the course of its work, BGA made a FOIA request to State. BGA sought any audits, inspections or reports issued by that department's Inspector General regarding the five American embassies receiving the most official visitors, and petitioned for a fee waiver. In an initial decision dated July 26, 1983, State denied the fee waiver request, stating that it did "not believe that the processing of [the] request [would] primarily benefit the general public." [15] BGA sought a reconsideration of this decision; but State denied its appeal on September 27, 1983, relying on the DOJ guidelines here at issue. BGA then appealed that decision in the District Court.

On December 8, 1983, counsel for State informed BGA that the agency had reversed its position and would grant the fee waiver. Subsequently, State filed a motion for summary judgment, arguing that its ultimate waiver of fees rendered the case moot as to the specific request and unripe as to the challenge to the facial validity of the guidelines. The District Court dismissed the case on these grounds, and this appeal followed.

NWF is a nonprofit organization "dedicated to the promotion of conservation principles on behalf of a large national ... constituency." [16] In March, 1983, NWF filed a FOIA request with the Montana State Director of the Bureau of Land Management ("BLM") [17] seeking documents related to the impact of proposed coal exchanges and lease sales on fish and wildlife, as well as a waiver of search and copying fees. The BLM denied the fee waiver request. NWF paid the required sum in order to expedite the processing of its request, while simultaneously seeking a reconsideration of the fee waiver denial. Citing the DOJ guidelines, the BLM, and subsequently Interior, refused to reconsider this decision.

NWF, like BGA, then sought relief in District Court. Here, too, Government counsel announced a reversal of the agency position, refunded the fee and filed a motion for summary judgment. The District Court held that the case was moot, and that, as a consequence, NWF lacked standing; the trial court also held that the challenges to the DOJ guidelines and the Interior regulation were not ripe. NWF appeals from that decision.

The BGA and NWF cases have been consolidated for purposes of this appeal.

## II. ANALYSIS

### A. *Mootness*

The Government claims that its belated decisions to waive the appellants' FOIA fees mooted the disputes before the District Court. However, appellants challenged not only the application of the DOJ guidelines and the Interior regulation to their respective requests, but also the facial validity of these provisions. Thus, BGA and NWF contend that the controversy between the parties remains alive.

The doctrine of mootness is a logical corollary of the "case or controversy" requirement of Article III of the Constitution. A federal court is constitutionally forbidden to render advisory opinions or "to decide questions that cannot affect the rights of litigants in the case before

---

15. BGA J.A. 45.

16. *NWF, et al. v. Department of Interior, et al.,* 616 F.Supp. 889, 891 (D.D.C.1984), *reprinted in* NWF J.A. 142.

17. The BLM is a division of the Department of Interior.

them." [18] Any judgment issued must resolve " 'a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " [19]

■ A consideration of the circumstances of this case in light of the constitutional standard reveals that the appellants' challenge to the standards *as applied to their specific fee waiver requests* is, in fact, moot. Even assuming appellants' claims that they were improperly denied fee waivers were well-founded, we cannot order the appellee departments to do something they have already done, *i.e.* waive the FOIA fees in the instant cases.[20] As to this issue, BGA and NWF " 'ha[ve] obtained everything that [they] could recover ... by a judgment of this court in [their] favor.' " [21] The appellants apparently seek a declaration from this court that the initial refusals to waive FOIA fees were unlawful; however, such a declaration would be an advisory opinion which federal courts may not provide.[22]

There is, however, no question that the appellants' other arguments concerning the facial validity of the DOJ guidelines and the Interior regulation are *not* moot. The challenge to the fee waiver denials was but one claim in the appellants' complaints; the additional counts were directed at the legality of the standards utilized by the appellees. The Government incorrectly assumed that the mootness of the former led inexorably to the mootness of the latter. The satisfaction of the claims for reversals of the individual fee waiver denials did not render moot the facial challenges to the guidelines and regulation.[23]

The appellants are frequent FOIA requesters; and neither State nor Interior have disavowed reliance on the guidelines or the Interior regulation. In fact, the Government clearly intends to apply these purportedly objectionable standards to FOIA fee waiver requests in the future. It is therefore evident that the allegedly impermissible practice, the utilization of the guidelines and the regulation in evaluating FOIA requests, has continued, that the appellants have alleged a continuing injury due to this practice, and that no relief has

**18.** *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).

**19.** *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

**20.** Counsel for the appellants suggested at oral argument that the "voluntary cessation of illegal activity" exception to the mootness doctrine salvaged the individual waiver denials from mootness. This suggestion is manifestly incorrect. The Government's waiver of fees left only the legal challenge to the facial legitimacy of its standards in controversy.

In *Dow Chemical Co. v. EPA,* 605 F.2d 673 (3d Cir.1979), the EPA revoked a rule that Dow charged had been invalidly promulgated under the APA, solely in order to remedy the alleged procedural irregularities, and made clear its intention to repromulgate a substantively identical rule. Relying on the "voluntary cessation" doctrine, the Third Circuit held that the substantive challenge to the rule was not moot. This court has subsequently clarified that holding: [T]he EPA's revocation of the rule under those circumstances did not moot the *entire* case, specifically the petitioner's challenge to the validity of the *substance* of the rule, which the court then went on to address.... Notably,

the court in *Dow* did not even address the merits of petitioner's earlier procedural challenge to the rule, which suggests that it implicitly regarded this issue as moot or that petitioner did not press the argument after the rule was revoked.
*National Resources Defense Council, Inc.* *("NRDC") v. NRC,* 680 F.2d 810, 814–15 n. 9 (D.C.Cir.1982). In the instant case, appellants' challenges to the rules as applied, like the procedural challenge in *Dow,* were mooted by the agency's curative actions. When courts apply the "voluntary cessation" doctrine, they typically conclude that the case is not moot; in fact, it often should be more precisely stated that the *entire* case is not moot.

**21.** *NRDC v. NRC,* 680 F.2d at 814 (quoting *California v. San Pablo & Tulare Railroad,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893)).

**22.** *Id.* at 815.

**23.** *See Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 121–22, 94 S.Ct. 1694, 1697–98, 40 L.Ed.2d 1 (1974) (proper to award declaratory relief when need for injunction has been removed but challenged governmental practice continues).

been forthcoming. In short, appellants' facial challenges are not moot. Moreover, both the Government and each District Court judge correctly perceived that the crucial question in this case was not one of mootness, but rather one of ripeness; and we now proceed to address that issue.

## B. *Ripeness*

■ The critical question of justiciability in this case is whether the facial challenges to the DOJ guidelines and the Interior regulation are ripe for review. Although it is true that "[r]ipeness law overlaps at its borders with Article III requirements of case or controversy," [24] its application in the present case implicates the doctrine in only its prudential aspects. [25] In that form, the ripeness inquiry takes into account pragmatic concerns regarding "the institutional capacities of, and the relationship between, courts and agencies." [26] These concerns include "the agency's interest in crystallizing its policy before that policy is subjected to judicial review," "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," and "the petitioner's interest in prompt consideration of allegedly unlawful agency action." [27] In *Abbott Laboratories*, [28] the Supreme Court announced the two-pronged test for ripeness that balances these interests. The test requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." [29]

■ Pursuant to the "fitness of the issues" prong, we first must decide whether the disputed claims raise purely legal ques-

tions and would, therefore, be presumptively suitable for judicial review. [30] Second, we determine whether the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form. [31] Finally, we examine the appellants' interest in immediate review. In order to outweigh any institutional interests in the deferral of review, appellants must demonstrate "hardship," *i.e.*, that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." [32]

■ Initially, we find that the questions presented by the instant case are fit for judicial resolution. Both appellants contend that, on their face, the DOJ guidelines violate FOIA. This question will be resolved by an analysis of FOIA, its legislative history, and its construction by relevant case law. Likewise, BGA's procedural challenge to the guidelines raises the purely legal question of whether State violated section 553(c) of the Administrative Procedure Act ("APA") by its failure to give public notice of, and an opportunity to comment on the guidelines. Finally, NWF alleges that the failure of Interior to promulgate regulations establishing specific criteria to govern FOIA fee waiver requests violates a purported FOIA requirement that all agencies do so. Each claim presents purely legal questions, the understanding of which neither requires nor is facilitated by further factual development. Our appraisal of the legitimacy of the DOJ guidelines in light of the statutory require-

24. *Eagle-Picher Indus., Inc. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985).

25. No party to this case contends that the constitutional criteria of the doctrine have not been met.

26. *Eagle-Picher Indus., Inc.,* 759 F.2d at 915.

27. *Id.*

28. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

29. *Id.* at 149, 87 S.Ct. at 1515.

30. *Id.; see also Eagle-Picher Indus., Inc.,* 759 F.2d at 915; *Continental Airlines, Inc. v. CAB,* 522 F.2d 107, 126 (D.C.Cir.1974) (en banc).

31. *See Arkansas Power & Light Co. v. ICC,* 725 F.2d 716, 725 (D.C.Cir.1984); *Continental Airlines, Inc.,* 522 F.2d at 124–25.

32. *Toilet Goods Assoc., Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967).

ments of FOIA and the APA would not be enhanced by the existence of a particular FOIA fee waiver request.[33]

Second, we find that the agency action in question has taken its final form. The DOJ guidelines at issue have been in effect well over two years. Both appellee departments assert that they will continue to rely upon the DOJ guidelines in their evaluation of FOIA fee waiver requests. Neither appellee has indicated that it intends to subject the guidelines to public notice and comment; nor has Interior suggested that it intends to take steps to adopt revised or different regulations. In other words, on the present record, it seems clear that Interior and State have utilized and will continue to utilize the standards at issue in their present form. From what appellees have said, no further procedural or substantive evolution is expected.

The appellees' description of the guidelines as "informal" is not definitive in our ripeness determination.[34] Courts have taken a "flexible" and "pragmatic" view of the finality of agency action.[35] Where, as here, the agency has stated that the action in question *governs and will continue to govern* its decisions, such action must be viewed as final in our analysis of ripeness.[36] "[W]hat is decisive is the substance of what [the agency] has done;"[37] here State and Interior have made final, not tentative, decisions to utilize the challenged fee waiver standards.

Finally, we hold that the continued use of the DOJ guidelines and the Interior regulation has a "direct and immediate"[38] impact on the appellants that rises to the level of hardship. These guidelines "purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of [the appellants.]"[39] As noted above, both BGA and NWF rely heavily and frequently on FOIA and its fee waiver provision to conduct the investigations that are essential to the performance of certain of their primary institutional activities—publicizing governmental choices and highlighting possible abuses that otherwise might go undisputed and thus unchallenged. These investigations are the necessary prerequisites to the fundamental publicizing and mobilizing functions of these organizations. Access to information through FOIA is vital to their organizational missions.

Thus, the "primary conduct" of the appellants is affected by the standards at issue. Moreover, this impact is "felt immediately."[40] The appellants are nonprofit public interest groups that routinely make FOIA requests that potentially would not be made absent a fee waiver provision. While under normal circumstances an appellant's budgetary constraints would not weigh decisively in our hardship evaluation,

33. Although the meaning of the guidelines and regulation might be illustrated by their application to particular fee waiver requests, such illustrations are not necessary to appellants' challenges. They contend that, *even without application,* the standards are facially inconsistent with FOIA and violate the APA, and are therefore illegal. It is these claims that we hereby hold ripe for review.

34. *See Continental Airlines, Inc. v. CAB,* 522 F.2d 107, 124 (D.C.Cir.1974) ("The label an agency attaches to its action is not determinative."). Although it is not clear whether State and Interior were *required* to adopt the DOJ guidelines, they apparently have constructively done so.

35. *See Abbott Laboratories,* 387 U.S. at 149–50, 87 S.Ct. at 1515–16.

36. Although certain of the questions that are pertinent to ripeness may also go to the merits,

we do not mean to prejudge the merits of these cases. The ripeness issue—concerning whether these cases are now fit for review—is separate from the questions concerning the nature of the guidelines and regulation, their alleged inconsistency with the legal mandate of FOIA, and the alleged applicability of notice and comment rulemaking under the APA. It is these latter questions that will be resolved by the District Court on remand.

37. *Sea-Land Service, Inc. v. Federal Maritime Comm'n,* 402 F.2d 631, 633 (D.C.Cir.1968).

38. *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517.

39. *Id.*

40. *Toilet Goods Assoc., Inc. v. Gardner,* 387 U.S. at 164, 87 S.Ct. at 1524.

here we have the additional authority of a Congressional determination that such constraints should not impede the access to information for appellants *such as these.*

Congress explicitly recognized the importance and the difficulty of access to governmental documents for such typically under-funded organizations and individuals when it enacted the "public benefit" test for FOIA fee waivers. This waiver provision was added to FOIA "in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests"[41] in a clear reference to requests from journalists, scholars and, most importantly for our purposes, nonprofit public interest groups.[42] Congress made clear its intent that fees should not be utilized to discourage requests or to place obstacles in the way of such disclosure, forbidding the use of fees as " 'toll gate[s]' on the public access road to information."[43] Payment in advance, followed by litigation to recover costs, may often be impossible if costs are prohibitive. Thus, insofar as these appellants are correct that the DOJ guidelines and standards in question act to discourage FOIA requests and to impede access to information for precisely those groups Congress intended to aid by the fee waiver provision,[44] they inflict a continuing hardship on the nonprofit public interest groups who depend on FOIA to supply their lifeblood—information. The appellants allege that the DOJ guidelines act to "chill" the ability and willingness of their organizations to engage in activity that is not only voluntary, but that Congress explicitly wished to encourage.

■ We recognize that this hardship analysis relies in part upon an acceptance of the appellants' view of the merits. However, when, as here, "[t]he issue of harm and the issue on the merits are inter-twined,"[45] we properly adopt such a perspective from which to address the threshold consideration of ripeness. *See* note 36 *supra.*

This case is on all fours with the recent decision of this circuit in *American Federation of Government Employees v. FLRA.*[46] In that case, the AFGE claimed that the statute in question provided a blanket authorization requiring agencies to grant official time off to employees representing their unions in the negotiation of collective bargaining agreements during "duty status," or worktime. The Government contended that its policy, which placed some limitations on that statutory entitlement, was not ripe for review because no hardship would exist until a union negotiator was confronted with a concrete denial of official time off by an agency. We disagreed and held as follows:

> If AFGE is correct in claiming that the statute provides a blanket authorization of official time for "duty status" time ... and we believe it is, then an authoritative rejection of the blanket nature of that entitlement is a concrete injury even if the impact on any particular union is not immediate. AFGE's claim that it is statutorily entitled to official time for negotiation of local agreements during what would otherwise have been duty status time has been firmly and finally rejected by the FLRA and, as the agency itself observes, the FLRA has applied the Interpretation of its rationale to a number of cases. This constitutes an impairment of rights, not a mere threat of future impairment.[47]

Likewise, in the present case, the appellants allege that, on their face, the guidelines deny them certain, purported statutory entitlements, such as, for example, a presumption that they, as nonprofit, public interest groups, must receive FOIA fee

---

41. *Ettlinger v. FBI,* 596 F.Supp. at 872; *see also* S.REP., *supra* note 6, at 11–12.

42. S.REP., *supra* note 6, at 11–12.

43. SUBCOMM. REPORT, *supra* note 7, at 78.

44. *Id.* at 90–96.

45. *National Wildlife Federation v. Snow,* 561 F.2d 227, 237 (D.C.Cir.1976).

46. 750 F.2d 143 (1984).

47. *Id.* at 145.

waivers.[48] Here, too, the allegedly impermissible standards have been and are now employed by the appellee departments, creating a current "impairment of rights" under FOIA.[49]

The Government relies heavily on the decision in *Webb v. Dept. of Health and Human Services*[50] in its argument that the instant case is not ripe for review. However, the appellants in this case have suffered hardship of a sort that was absent in *Webb*. In that case, this court held that the appellant's challenge to a Food and Drug Administration ("FDA") regulation was not ripe. Specifically, we determined that the challenge to the FDA rule at issue was uniquely fact-based, stating that "the validity of applying [the regulation] to a FOIA request will vary depending on what information is actually contained in the N[ew] D[rug] A[pplication] file."[51] Moreover, we found that the only hardship that would spring from delayed consideration in *Webb* was "the burden of having to file another lawsuit ... hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form."[52] The court also disbelieved the plaintiff's claim that he was a frequent FOIA requester.

Here we are confronted with an entirely different set of circumstances. As discussed above, the instant cases involve purely legal issues, the resolution of which would not be measurably enhanced by factual illustration. Appellants' claims concerning the nature of the guidelines and regulation, their alleged facial inconsistency with the legal mandate of FOIA, and the alleged requirement of notice and comment rulemaking are matters that are presently ripe for review. Appellants are indisputably frequent FOIA requesters, whose daily conduct and decision-making are affected by the standards at issue. Finally, and most importantly, appellants allege a continuous injury due to a deprivation of a statutory entitlement. *Webb* is simply not apropos of the circumstances here at issue, either with respect to the "fitness of the issues" or the "hardship" prong of the ripeness test. Rather, we believe that the controlling precedent here is *American Federation of Government Employees*, and we adhere to it in finding these cases ripe for judicial review.

In sum, the prudential considerations implicated by the ripeness doctrine all militate for judicial review in the instant case. The issues are purely legal, the agency actions final, and the hardship to the parties cre-

**48.** For example, the appellants contend that the purposes and the legislative history of FOIA indicate that persons or organizations making requests for nonprofit purposes should generally receive fee waivers. Granting such waivers "encourages participation in the government process by those without a direct economic motivation to do so." Bonine, *Public-Interest Fee Waivers Under the FOIA*, 1981 DUKE L.J. 213. The sources relied upon by Congress in enacting the fee waiver provision each concluded that nonprofit requests merit fee waivers. *See* S.REP., *supra* note 6, at 3, 10, 11, 12; Bonine, *supra* at 239–42. *See also* SUBCOMM. REPORT, *supra* note 7, at 96:

> The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

No such presumption appears in the 1983 DOJ guidelines; indeed there is no mention of nonprofit groups in the section of the guidelines entitled "the requester's identity and qualifications."

**49.** Our conclusion that appellants will suffer hardship if review is withheld also holds true for BGA's claim that State's failure to expose the guidelines to notice and comment violates the APA. BGA is an interested party and arguably suffers continuing injury to its procedural rights if State has altered its practice without following APA requirements. *See National Conservative Political Action Committee v. Federal Election Committee,* 626 F.2d 953, 957 (D.C.Cir. 1980).

**50.** 696 F.2d 101, 107 (D.C.Cir.1982).

**51.** *Id.* at 106.

**52.** *Id.* at 107.

ated by withholding review are concrete and present. These facial challenges to the guidelines and to Interior's failure to promulgate specific criteria governing fee waiver determinations are now ripe for judicial resolution.[53]

## C. *Remand*

Our decision that this case is ripe for judicial review leaves for resolution several complex questions involving the applicability of FOIA and the APA. First, the District Court must determine whether the DOJ guidelines utilized by the appellee departments are inconsistent with the mandate of FOIA. In other words, the trial court must ascertain whether FOIA requires DOJ to provide more or different substantive standards to regulate fee waiver determinations under FOIA.

The Government characterizes the guidelines solely as helpful advice, and thus may argue that their substantive content is irrelevant, because it is not binding. We were unable to discern either from the record or from the response of counsel at oral argument whether the DOJ guidelines are, or are perceived as, mandatory, or whether they are purely advisory in nature. The appellee departments, however, appear to have believed that adherence to the guidelines was required.[54] In any event, appellants contend that, whether or not mandatory, the guidelines are being followed by State and Interior, and that they are facially invalid.

Second, BGA contends that the Government was required to follow notice and comment rulemaking pursuant to section 553 of the APA in promulgating the guidelines. In other words, BGA asserts that the guidelines are "rules" within the meaning of section 551(4) of the APA and that they fall far outside the purview of the statutory exceptions to the rulemaking requirements.[55] However, as noted above, the Government characterizes the guidelines as advisory only. The District Court must therefore decide whether the strictures of the APA require the appellees to submit the DOJ guidelines to the public for notice and comment.

Finally, appellants appear to contend that, even assuming that these particular "guidelines" are not properly subject to the rulemaking requirements of the APA, FOIA mandates the enactment of some specific criteria to govern waiver requests. Implicit in this suggestion is the argument that the appellees' existing guidelines, regulations and practices fall short of what is required by FOIA, and that when lawful rules are finally adopted they must be promulgated pursuant to notice and comment rulemaking.

All of these questions must be resolved by the District Court on remand.

## III. CONCLUSION

Although the appellants' original claims involving the Government's refusal to

---

**53.** Due to our resolution of the mootness and ripeness questions, the problem of standing in the present case dissolves. *See Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975). Moreover, the appellants have clearly demonstrated that they have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury would be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)).

**54.** *See, e.g.,* Letter from State to BGA (Sept. 27, 1983) ("Recent guidelines issued by the Justice

Department *require* that requests meet certain criteria before agencies may waive fees.") (emphasis supplied), *reprinted in* BGA J.A. 49–50; Letter from BLM to NWF (Apr. 13, 1983) ("Your request for a fee waiver for the materials you requested in your letter of March 11, 1983, was denied because it did not fully meet the applicable criteria."), *reprinted in* NWF J.A. 21; Memorandum re FOIA Appeal of Thomas France of the NWF (June 22, 1983) ("In determining whether furnishing information will primarily benefit the general public ... five factors are relevant...."), *reprinted in* NWF J.A. 35–36.

**55.** *See Environmental Defense Fund, Inc. v. Gorsuch,* 713 F.2d 802, 814–16 (D.C.Cir.1983); *Batterton v. Marshall,* 648 F.2d 694, 708 (D.C.Cir. 1980).

waive their FOIA fees are moot, the facial challenges to the DOJ guidelines and the Interior regulation are live, ripe controversies which we hereby remand to the District Court for resolution.

*So Ordered.*

J. SKELLY WRIGHT, Circuit Judge, concurring in the result.

I agree with the decision to remand this case, but I would prefer to base it on the well-established rule that when a defendant voluntarily ceases an allegedly unlawful activity, the challenge to this activity is not rendered moot unless there is no reasonable expectation that the wrong will be repeated. *County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1978); *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). This doctrine prevents the defendant from "return[ing] to his old ways" and preserves the "public interest in having the legality of the practices settled." *W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. at 897. It is implicit in the decisions applying this doctrine that it subsumes many of our prudential concerns underlying ripeness. *See, e.g., Doe v. Harris,* 696 F.2d 109 (D.C.Cir.1982); *Commonwealth of Va. ex rel. Coleman v. Califano,* 631 F.2d 324 (4th Cir.1980). The fact that the alleged harm has already been threatened against the parties before us, and might occur again, is sufficient assurance that we are not deciding speculative questions. Concern with potential recurrence of the challenged activity also helps prevent a defendant from manipulating the judicial process to harass or exhaust a claimant.