911 F.2d 813
 286 U.S.App.D.C. 71
 OFFICE OF COMMUNICATION OF The UNITED CHURCH OF CHRIST and
Action for Children's Television, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents.
 No. 89-1109.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 13, 1990.
Decided Aug. 28, 1990.
 
 Donna Lampert, with whom Henry Geller and Andrew Schwartzman were on the brief, for petitioners.
 C. Grey Pash, Jr., Atty., F.C.C. ("FCC"), with whom Robert L. Pettit, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, FCC, James F. Rill, Asst. Atty. Gen., Catherine G. O'Sullivan, and David Seidman, Attys., Dept. of Justice, were on the brief, for respondents. Diane S. Killory also entered an appearance for respondents.
 Before BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 In 1982, the Federal Communications Commission amended its rules to eliminate its twenty-year-old "anti-trafficking" policy, under which the purchase and resale of broadcast licenses within three years was presumed to be contrary to the public interest. Little more than a year after the Commission had denied reconsideration of the amendment, petitioners applied for a new rulemaking to, in effect, reinstate the anti-trafficking policy. The Commission denied this application, noting that the arguments it raised had already been considered and rejected at the time of the rule's amendment. Petitioners now seek review. Because the Commission acted within its broad discretion to define the public interest and reasonably concluded that petitioners' arguments did not justify a new rulemaking, we deny the petition for review.
 
 I. BACKGROUND
 
 2
 The Communications Act of 1934 provides that
 
 
 3
 No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.
 
 
 4
 47 U.S.C. Sec. 310(d) (1982).
 
 
 5
 From 1962 until 1982, the Federal Communications Commission maintained an "anti-trafficking" policy with respect to the sale of broadcast licenses. This policy created a presumption that "the transfer or assignment of a broadcast license held for a short time is prima facie inconsistent with the duties of the licensee and the public interest." Procedures on Transfer and Assignment Applications, 32 F.C.C. 689, 690 (1962). To implement this policy, the Commission adopted a rule whereby an applicant seeking the transfer or assignment of a station held for less than three years would be put to a full hearing unless it could make a compelling showing of unforeseen circumstances or hardship. Id. at 691.
 
 
 6
 After twenty years of applying this rule, the Commission came to the view that the "rule had outlived whatever validity and utility it may have had." Applications for Voluntary Assignments or Transfers of Control, 47 Fed.Reg. 985, 986 (1982). Comments were accepted on the proposed elimination of the "three year" rule. Following the comment period, the FCC eliminated it. Amendment of Section 73.3597, 52 Rad.Reg. 2d (P & F) 1081 (1982). The Commission based its decision on its experience in applying the rule, its conclusion that expanding the possibilities for entry would best serve the goal of increasing the quality of service and the diversity of station owners, and its belief that "marketplace forces would preclude efforts to recoup investment costs through overcommercialization." Id. at 1082-83, 1087-88. The FCC noted that the "overwhelming majority of parties commenting in this proceeding support[ed] the Commission's proposal." Id. at 1083. In February 1985, the Commission denied petitions for reconsideration of its elimination of the policy. Amendment of Section 73.3597, 99 F.C.C.2d 971 (1985).
 
 
 7
 On August 14, 1986, the Office of Communication of the United Church of Christ ("UCC") and Action for Children's Television ("ACT") filed a petition for rulemaking to reinstate the anti-trafficking policy. The petition was dismissed by the Acting Chief of the Mass Media Bureau in an opinion letter dated August 21, 1986. This letter noted that almost all of the arguments raised by the petition were substantially the same as those that the Commis sion had considered and rejected in its original order abandoning the anti-trafficking policy and its subsequent denial of reconsideration; none set forth a basis for upsetting the 1982 order. Two weeks later UCC and ACT applied for review of the Bureau decision by the full Commission. In this petition, UCC and ACT restated their views that the 1982 decision was in error, but also alleged that new developments in the industry had undercut the basis for the earlier decision.
 
 
 8
 In February 1989, the Commission issued a Memorandum Opinion and Order denying the application for review. Amendment of Section 73.3597, 4 F.C.C. Rcd 1710 (1989) ("1989 Order"). The Commission reaffirmed each of its policy justifications for its abandonment of the anti-trafficking rule. It noted that while petitioners had alleged that recent experience revealed a decline in issue-oriented community programming and children's programming as a result of the new policy, they had presented "no data or other evidence to support this allegation." Id. at 1712. The Commission also rejected petitioners' claims that destructive station debt burdens and reduced opportunity for women and minority broadcasters had resulted from the policy. Id. at 1711-12. The Commission thus found "initiation of a rule making proceeding on the subject of trafficking [was] not warranted." Id. at 1712. Following this decision, UCC and ACT filed for review in this court.
 
 II. DISCUSSION
 
 9
 Petitioners make two arguments to support their claim that the Commission acted erroneously in denying their petition. First, they argue that the public interest provisions of the Communications Act of 1934, 47 U.S.C. Secs. 151-611 (1982 & Supp. V 1987) ("Act"), require the adoption of an anti-trafficking policy. Second, they argue that the Commission acted arbitrarily and capriciously, in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1988), in not looking at the evidence of changed circumstances in the broadcast industry since the 1982 decision.
 
 
 10
 The Commission responds that nowhere do petitioners point to the provisions of the Act that it has allegedly violated; moreover, Congress gave it discretion in determining the public interest that is broad enough to sustain its conclusion that that interest is now served by the freer marketability of licenses. The FCC contends that it considered all of petitioners' arguments, concluded that its previous findings were still valid, and adequately explained its decision to affirm the Bureau action. The Commission also makes two jurisdictional arguments: The petition is essentially an untimely petition for review of its 1985 denial of reconsideration of the original rule change and, in any event, the issues raised in the petition are not ripe for judicial review. We will address these issues first, then turn to the merits.
 
 A. Jurisdictional Arguments
 1. Timeliness
 
 11
 Petitioners raise almost exactly the same issues and arguments that were considered by the Commission at the time of the elimination of the anti-trafficking policy, prompting the Commission to argue that the current petition is merely an attempt to circumvent the statutory sixty-day limitation on petitions for review of agency action. See 28 U.S.C. Sec. 2344 (1988).
 
 
 12
 A review of the 1982 decision reveals that Citizens Communications Center, one of the petitioning parties in that rulemaking, raised the same argument that UCC and ACT now make, namely, that the profit factor motivating traffickers make them per se incapable of acting in the public interest because, among other things, "[public interest] programming has a negligible or even an inverse relationship to profit." Amendment of Section 73.3597, 52 Rad.Reg. 2d (P & F) at 1085 (internal quotes omitted); see Petition for Notice of Proposed Rulemaking, at 3-4 (Aug. 14, 1986); Petitioners' Brief at 10, 24-25. Petitioners simply disagree with the Commission's conclusion in its 1982 decision that "speculators" may in fact serve the public interest by infusing new capital and ideas into ailing stations, making them more re sponsive to their audiences. 52 Rad.Reg. 2d (P & F) at 1088.
 
 
 13
 Petitioners argue, nonetheless, that changed circumstances now warrant a new review of the 1982 decision. In Geller v. FCC, 610 F.2d 973 (D.C.Cir.1979), we recognized that the occurrence of a significant intervening event could "fatally undermine[ ] the Commission's public-interest justification for the regulations in question [and yet] not mature until long after completion of the administrative proceeding from whence they emanated." Id. at 978 n. 38.
 
 
 14
 The Commission reads Geller as standing for the proposition that any time a challenge is made to the continuing validity of a Commission determination, there must be an allegation of something directly undermining the previous conclusion's reasoning, or the court is required to dismiss the case. In Geller, however, we noted that
 
 
 15
 the period statutorily prescribed for judicial review of an administrative order governs only direct review of that order. Geller's petition in this court is for review, not of the 1972 order promulgating the contested rules, but of the 1976 order refusing to reexamine their continuing validity.
 
 
 16
 Id. at 978 (footnote omitted); see also Functional Music, Inc. v. FCC, 274 F.2d 543, 546 (D.C.Cir.1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959). Here, it is clear that regardless of the substance of the arguments that petitioners raise, the order they petition us to review is not the 1982 order promulgating the contested rules, or the 1985 order denying reconsideration of the change, but rather the 1989 order denying reconsideration on petitioners' application for a new rulemaking. While petitions that are wholly repetitive might be treated in a summary manner, see 47 C.F.R. Sec. 1.401(e) (1989), the argument that this petition is untimely because of 28 U.S.C. Sec. 2344 must fail.
 
 2. Ripeness
 
 17
 The Commission argues that the issues raised in this petition are not ripe for judicial review under the two-prong test established by the Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967). In applying that test, we first determine whether the agency action is sufficiently final "so that we would have no interest in postponing review until the issues are more concrete." Midwestern Gas Transmission Co. v. FERC, 589 F.2d 603, 618 (D.C.Cir.1978). Next, if we lean toward postponement, we must consider whether there are immediate impacts so harmful to the petitioners that present consideration is warranted. Id.
 
 
 18
 The Commission contends that all we have on the record is petitioners' speculation that the rapid turnover in ownership permitted by the new policy will encourage licensees to pursue profits at the expense of their obligations to the public. As petitioners have not given one example of such a consequence, the FCC argues that the court should wait until it actually grants a license that petitioners feel not to be in the public interest so that a concrete issue may be presented for adjudication. Petitioners, on the other hand, maintain that this case involves only the resolution of the legal question of whether the Commission can lawfully fail to reinstate the anti-trafficking rule in light of the evidence presented of trafficking. They argue that because resolution of this question would not be rendered more concrete by further factual development, adjudication at this time is proper. See Better Gov't Ass'n v. Department of State, 780 F.2d 86, 92 (D.C.Cir.1986).
 
 
 19
 We conclude that the issues raised in this petition are ripe for judicial review. In Better Gov't Ass'n, we considered whether a claim that Justice Department guidelines for waiver of search and copying fees violated the Freedom of Information Act was ripe for judicial review. In deciding that it was, we noted that resolution of the question required an analysis of FOIA and its construction by relevant case law. This, we determined, was a purely legal question presumptively suitable for judicial review. Id. at 92-93. Second, we found that the agency action had taken its final form, even though the petitioners were challenging the validity of the guidelines rather than waiting for their application to a particular case. Id. at 93. Similarly, in the instant case, the only question with which we are presented is whether the Commission must adopt an anti-trafficking policy and a presumption that the transfer of a broadcast license in less than three years is contrary to the public interest. We are not asked to consider the validity of any particular transfer, and our resolution of the issue therefore does not require the development of a more complete factual record.
 
 B. Merits
 
 20
 Petitioners argue that the Communications Act requires an anti-trafficking rule and that the Commission's refusal to reinstate such a rule is thus contrary to law. Moreover, petitioners claim that the Commission was arbitrary and capricious in failing to address the evidence of changed circumstances in the marketplace since the time of the previous rulemaking. We address these contentions in turn.
 
 
 21
 The Act provides that no transfer, assignment, or disposal of a license shall take place except upon application to the Commission and "upon finding by the Commission that the public interest, convenience, and necessity will be served thereby." 47 U.S.C. Sec. 310(d). There is no mention in the Act of trafficking, and no express prohibition thereof. The only evidence that petitioners offer in support of an anti-trafficking requirement is the language in court cases that have simply upheld prior FCC conclusions about the desirability of the rule. Petitioners cite this court's decision in Crowder v. FCC, 399 F.2d 569 (D.C.Cir.), cert. denied, 393 U.S. 962, 89 S.Ct. 400, 21 L.Ed.2d 375 (1968), for the proposition that the Communications Act itself prohibits trafficking. This view is mistaken. In Crowder, we were clearly upholding an FCC determination of the public interest, not mandating our own interpretation of the public interest. Id. at 571-73.
 
 
 22
 The cases that petitioners cite to support their view of what the "public interest" requires illustrate instead the deference owed the FCC in its determination of that interest. In Black Citizens for a Fair Media v. FCC, 719 F.2d 407 (D.C.Cir.1983), cert. denied, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 848 (1984), for example, Judge Bork noted that
 
 
 23
 the FCC is entitled to reconsider and revise its views as to the public interest and the means needed to protect that interest, though it must give a sufficient explanation of that change. The language of the Act imposes few specific requirements and the FCC is generally given broad discretion. The public interest standard is a supple instrument for the exercise of discretion by the expert body which Congress has charged to carry out its legislative policy. For that reason, petitioners' reliance on past FCC statements of its mandate is misplaced.
 
 
 24
 Id. at 411 (citations and internal quotes omitted, emphasis added).
 
 
 25
 It is on just such kinds of past statements that petitioners attempt to rely. Were we to accept their approach, we would wrongly lock the Commission into a particular understanding of the public interest, denying it the right we expressly recognized in Black Citizens to "reconsider and revise" its views. The Act itself contains no prohibition of trafficking, let alone a three-year rule, and we decline petitioners' invitation to amend the statute judicially so as to include one. In this light, it is evident that the Commission was within its discretion in abandoning the anti-trafficking policy, given its well-articulated conclusion that continuation of the rule would lead to more deterioration in service than would its elimination. Petitioners' sole rationale for why the Commission's action is contrary to law is their theory that profit motivation is always and everywhere inconsistent with acting in the public interest. In the absence of any specific evidence that programming quality has declined as a consequence of the elimination of the three-year rule, it is within the Commission's discretion to reject this theory.
 
 
 26
 Petitioners nevertheless maintain that the Commission acted arbitrarily and capriciously in failing to reassess its earlier decision to revoke the anti-trafficking policy because it failed to consider petitioners' evidence of new circumstances. That evidence consisted solely of anecdotal data, statements of a congressman who attempted to introduce legislation reinstating the three-year rule, and a magazine article which, petitioners admit, did not in fact identify "trafficking" as the cause of their perceived injuries. Petition for Notice of Proposed Rulemaking, at 6-8. They also claimed that the surge in trading in broadcast stations triggered by the revocation of the three-year rule threatened the stability of the broadcast industry. Id. at 8-9.
 
 
 27
 The 1989 Order reviewed the findings made in the earlier rulemaking and reaffirmed the Commission's continued confidence in them. 4 F.C.C. Rcd at 1710. The Commission then went on to address each of the developments that UCC and ACT cited in support of their petition. In each case it found that no significant evidence had been offered to support the contention that circumstances warranted a new rulemaking. See id. at 1711-12. Specifically, the Commission noted that "[a]pplicants have not shown that licensees holding a station for a short period of time are any less likely than others to provide good service." Id. at 1711. It concluded that petitioners showed no evidence that the amount of a station's debt adversely affected its programming, or for that matter that the amount of debt is linked to the length of time a particular licensee has owned a station. Id. The Commission further noted that petitioners provided no evidence or data to support the allegation that community issue-oriented programming and children's programming had been adversely affected by trafficking. Id. at 1712. Given the essentially repetitive nature of their claims, petitioners bore a heavy burden of showing changed circumstances. They failed to meet it.
 
 
 28
 The Commission's finding that new rulemaking was unwarranted was based on its determination that the reasoning of its prior rulemaking was still applicable and that no new evidence sufficient to warrant reconsideration had been presented. We conclude that the Commission reasonably relied on its prior findings which, in light of petitioners' failure to provide relevant evidence of changed circumstances, offered a sufficient explanation of the Commission's refusal to order a new rulemaking.
 
 III. CONCLUSION
 
 29
 Petitioners' reliance on pre-1982 case law attempts to lock the Commission into its old policy by reading its old analysis into the statute. To allow such an interpretation would rob the FCC of the discretion with which Congress has clearly entrusted it. The Commission must, of course, recognize departures from prior policy and give a reasonable explanation for such changes. The Commission has done that here. The petition for review is therefore
 
 
 30
 Denied.