**TELECOMMUNICATIONS RESEARCH AND ACTION CENTER, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**National Broadcasting Company, Inc., and Oliver Productions, Inc., Intervenors.**

No. 89–1616.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1990.

Decided Oct. 26, 1990.

As Amended Oct. 2, 1990.

Gigi B. Sohn, with whom Andrew Jay Schwartzman, Washington, D.C. was on the brief, for petitioner.

C. Grey Pash, Jr., Atty., F.C.C., with whom Daniel M. Armstrong, Associate Gen. Counsel, Washington, D.C., was on the brief, for respondents. Robert L. Pettit, General Counsel, F.C.C., Catherine G. O'Sullivan, and Laura Heiser, Attys., U.S. Dept. of Justice, Washington, D.C., also entered appearances for respondents.

Richard E. Wiley, Lawrence W. Secrest, III and David E. Leibowitz, Washington, D.C. entered appearances for intervenor, Oliver Productions, Inc.

Molly Pauker, Washington, D.C. entered an appearance for intervenor, Nat. Broadcasting Corp., Inc.

Before MIKVA, EDWARDS, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

Concurring Opinion filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

The petitioner, Telecommunications Research and Action Center ("TRAC"), challenges an order of the Federal Communications Commission ("FCC" or "Commission") holding that certain segments of *The McLaughlin Group* ("*McLaughlin*") television program are "bona fide newscasts" and thus exempt from the "equal time" requirement of section 315 of the Communications Act, 47 U.S.C. § 315 (1988). TRAC argued before the Commission that appearances by candidates during the brief segments of *McLaughlin* at issue are only "fleeting uses" to which section 315 does not apply, rendering unnecessary a FCC ruling on the bona fide newscast issue. TRAC now argues before this court that the *McLaughlin* segments are not exempt under section 315 as bona fide newscasts, and that the Commission's ruling to the contrary reflects a misconstruction of the statute. Given the particular posture of this case, in which TRAC argued below for an end result it now contests, we find that the petitioner has suffered no injury and therefore lacks standing to press its challenge. Accordingly, we deny the petition for review.

## I. BACKGROUND

Section 315 of the Communications Act provides that whenever a television or radio station permits a "legally qualified candidate for any public office" to "use" a station, it must "afford equal opportunities to all other such candidates for that office in the use of such broadcasting station." 47 U.S.C. § 315(a) (1988). Four categories of news programming are exempt from this "equal time" rule:

(1) bona fide newscast[s],

(2) bona fide news interview[s],

(3) bona fide news documentar[ies] (if the appearance of the candidate is incidental to the presentation of the subject or subjects covered by the news documentary), or

(4) on-the-spot coverage of bona fide news events (including but not limited to political conventions and activities incidental thereto).

47 U.S.C. § 315(a)(1)–(4) (1988). Also excepted from the requirements of section 315, under the FCC's "fleeting use" doctrine, are candidate appearances so brief that they do not constitute "uses" within the meaning of section 315. *See Time, Inc.*, 55 Rad.Reg.2d (P & F) 581 (1984).

In October 1988, intervenor Oliver Productions, Inc. ("Oliver"), the independent producer of *McLaughlin*, asked the FCC to declare certain *McLaughlin* segments exempt under section 315(a)(1) as bona fide newscasts. A typical *McLaughlin* program, according to Oliver, consists of four to six distinct "news reporting segments," each followed by a panel discussion, during which the program host reads current news stories accompanied by video-taped newsclips. Joint Appendix ("J.A.") 23. Because of the possibility that this "news reporting" might include coverage of legally qualified candidates, Oliver requested that the news reporting segments be declared bona fide newscasts exempt from the equal time rule. J.A. 6.[1]

The FCC's Mass Media Bureau granted Oliver's request in November 1988, ruling that *McLaughlin*'s news reporting segments are exempt from section 315's equal time provisions as bona fide newscasts. *Oliver Productions, Inc.*, 3 F.C.C. Rcd 6642 (Nov. 4, 1988). In December 1988, in its petition for review before the Commission, TRAC raised two independent claims against the Bureau's ruling. First, TRAC argued that appearances by candidates during the brief segments of *McLaughlin* at issue are fleeting uses to which section 315

---

**1.** In its initial request, Oliver apparently sought to exempt the *McLaughlin* program in its entirety under section 315(a)(1). *See* J.A. 6. A week later, Oliver clarified its position, limiting its request to the program news reporting segments. *See* J.A. 23.

is inapplicable. TRAC claimed that, because the *McLaughlin* segments are excepted from the operation of section 315 at this threshold level, the Bureau erred in reaching the question of the bona fide newscast exemption. J.A. 38–41. Second, TRAC contended that the Bureau misconstrued section 315(a)(1)'s bona fide newscast exemption, both by extending it beyond traditional news broadcasts to a panel program and by applying it to a program that is not under the editorial control of a licensee or network. J.A. 41–48.

The Commission rejected both of TRAC's claims and affirmed the Bureau ruling. *Oliver Productions, Inc.*, 4 F.C.C. Rcd 5953 (Aug. 2, 1989). The Commission found that, because at least some candidate appearances on the *McLaughlin* segments would not be considered "fleeting," section 315 may apply to *McLaughlin* absent an exemption, and the Bureau properly reached the bona fide newscast issue. Moreover, the Bureau correctly interpreted section 315(a)(1) when it determined that *McLaughlin*'s news reporting segments constitute bona fide newscasts within the meaning of the statutory exemption. *Id.* at 5954–55.

TRAC seeks review of the Commission order in this court, arguing now only that the FCC has misconstrued section 315(a)(1) by applying the bona fide newscast exemption to the *McLaughlin* segments. In addition to disputing TRAC's reading of the statute, the Commission argues that TRAC lacks standing to challenge its order.

## II. ANALYSIS

Petitioners seeking judicial review of FCC orders are, of course, held to the constitutional requirement of standing. To satisfy this requirement, they must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700

(1982). Abstract injury is not enough; petitioners must suffer "injury in fact" to meet the article III standing test. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 218–19, 94 S.Ct. 2925, 2930–31, 41 L.Ed.2d 706 (1974).

TRAC is a national organization that frequently appears before the FCC on behalf of its listener and viewer members. J.A. 38. The Commission does not dispute that, as a general matter, TRAC has standing to challenge FCC orders under the doctrine of "viewer standing." This doctrine permits an individual viewer, or, as here, a membership organization representing such viewers, to claim injury in fact when the FCC takes an action affecting the right of the public to be informed. *See Office of Communication of United Church of Christ v. FCC*, 359 F.2d 994, 1000–06 (D.C.Cir.1966). TRAC alleges that the FCC's exemption of *McLaughlin* from the equal time rule deprives its member-viewers of exposure to alternative viewpoints, Reply Brief for Petitioner at 6; ordinarily such an allegation would suffice to confer viewer standing upon TRAC.

This case, however, comes to us in a somewhat unusual posture. Before the Commission, TRAC argued in part for the very outcome it now contests, maintaining that the *McLaughlin* segments in question are excluded from the reach of section 315 as "fleeting uses." Thus, in contending that candidate appearances on the *McLaughlin* news reporting segments do not trigger equal opportunity obligations under section 315, TRAC agreed with the result that was ultimately reached by the FCC. On this record, the Commission argues that TRAC has suffered no injury and therefore lacks standing to obtain review of the order. We agree.

TRAC's position with respect to *McLaughlin*'s status under section 315—that the program is both excepted from the equal time rule under the "fleeting use" doctrine and governed by the equal time rule because it is not a bona fide newscast—is patently inconsistent. In advancing this position, TRAC has, for purposes of the present litigation, disavowed any

interest in whether or not *McLaughlin* is held to the provisions of section 315, and cannot now claim injury flowing from *McLaughlin*'s exemption as a bona fide newscast. That TRAC disagrees with the rationale employed by the FCC to reach a result it endorsed below does not constitute injury cognizable for standing purposes. TRAC's interest in the Commission's legal reasoning and its potential precedential effect does not by itself confer standing where, as here, it is "uncoupled" from any injury in fact caused by the substance of the FCC's adjudicatory action. *See, Capital Legal Found. v. Commodity Credit Corp.*, 711 F.2d 253, 258 (D.C.Cir.1983).

Our holding is a narrow one, reaching only TRAC's standing to obtain review of the agency rationale underlying a single declaratory ruling. If this case had involved a challenge by TRAC to a broad statement of agency policy, or an agency rule, then we would be faced with an entirely different situation. Indeed, the Commission conceded as much at oral argument. In such a case, TRAC's suit would be governed by the principle applied in *International Brotherhood of Electrical Workers v. ICC*, 862 F.2d 330, 334 (D.C.Cir. 1988), and *Better Government Association v. Department of State*, 780 F.2d 86, 90–92, 96 n. 53 (D.C.Cir.1986), under which a party who prevails on a challenge to a rule *as applied* is nonetheless permitted to appeal from an adverse decision on a facial challenge to the rule itself. *See also Radiofone, Inc. v. FCC*, 759 F.2d 936, 938 (D.C.Cir.1985) (separate opinion of Scalia, J.) (distinguishing for standing purposes effect of interpretation of law adopted as a rule from effect of same interpretation set forth as rationale of agency adjudication).

The Commission also recognized at oral argument that should *McLaughlin*'s program format subsequently change, this petitioner likely would have viewer standing to raise a properly framed challenge to the continued applicability of the bona fide newscast exemption. And, as the Commis-

sion acknowledged, the FCC's declaratory ruling in this case will not preclude TRAC, or some other petitioner with viewer standing, from challenging the ruling's underlying reasoning as applied to a different program in a different proceeding.

## III. CONCLUSION

On the particular facts of the case before us, and for the reasons set forth above, TRAC lacks standing to challenge the Commission order. Therefore, the petition for review is hereby denied.

*So ordered.*

SILBERMAN, Circuit Judge, concurring:

I concur in all of the court's opinion except for the penultimate paragraph. That paragraph is pure dicta which is patently unnecessary for our disposition of this case. The relative consequences of rulemaking versus adjudication for standing purposes, moreover, is a subject of great subtlety and we certainly should not discuss it unless it is necessary for our decision. *Compare Radiofone, Inc. v. FCC*, 759 F.2d 936, 938 (separate opinion of Scalia, J.) with *id.* at 941 (Edwards, J., concurring) ("Given the present posture of the case, I find it unnecessary to ponder the abstract question whether a petitioner has standing to challenge an agency action on the basis of the 'precedential effect of the agency's rationale in later adjudication'"). Cases such as *International Brotherhood of Electrical Workers v. ICC*, 862 F.2d 330 (D.C.Cir.1988) and *Better Government Association v. Department of State*, 780 F.2d 86 (D.C.Cir.1986) merely illustrate the principle that despite a disposition which favors a given party it might still challenge a general rule if that rule remains in existence and creates a cognizable harm through its effects on that party's future rights.[1] Close analysis of those cases reveals that each determination for

1. Counsel for the FCC did state at oral argument, after his attention was drawn to cases cited above, that a rulemaking which has future effects on the litigants would present a different case for Article III injury analysis but that hardly justifies an effort by this court to announce a broad rule in dicta.

standing purposes turns to a great extent on the unique facts of each case, especially on the possibility that the continued validity of the rule creates the prospect that the same plaintiff can be injured by its operation in the future. *See International Bhd. of Elec. Workers*, 862 F.2d at 334, *Better Gov't Ass'n*, 780 F.2d at 90–92. Thus, then-Judge Scalia drew a distinction between the standing of *competitors* to contest the grant of licenses in rulemaking and adjudicatory proceedings. In the former, the threat of issuance of more licenses was a continuing one, thus preserving competitors' standing even if they prevailed in the specific case on the challenge to the rule "as applied." In the latter, no rule was promulgated to be applied in the future and thus no injury to the competitors once the license is not granted, regardless of the agency's reasoning. *See Radiofone*, 759 F.2d at 938–39. Nothing in the opinion analyzed the same issue from the perspective of the license seeker.