AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent,

United States of America, Intervenor.

No. 82–1272.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 7, 1984.

Decided Dec. 21, 1984.

Mark D. Roth, Washington, D.C., with whom James R. Rosa, Washington, D.C., was on the brief, for petitioner.

Robert J. Englehart, Washington, D.C., for respondent. Steven H. Svartz, Acting Sol. and Ellen Stern, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent. Elizabeth Medaglia, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

William Kanter, Michael Kimmel and Marilyn S.G. Urwitz, Attys., Dept. of Justice, Washington, D.C., were on the statement in lieu of brief, for intervenor.

Before MIKVA, BORK, and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case arises under the Federal Service Labor-Management Relations Statute ("FLRS"), 5 U.S.C. § 7101 *et seq.* (1982). Enacted as part of the Civil Service Reform Act of 1978 ("the Act"), the FLRS provides a statutory framework for the governance of labor relations between federal agencies and their employees. The Federal Labor Relations Authority ("FLRA") was established under the Act to administer the FLRS, filling a role "in the public sector ... analogous to that of the National Labor Relations Board in the private sector." *Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* — U.S. —, —, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983) (citation omitted) (hereafter cited as *"BATF"*).

The Act directs the FLRA to "establish[ ] policies and guidance relating to matters" arising under the statute. 5 U.S.C. § 7105(a)(1). Pursuant to this authority, the FLRA issued the decision under review

in this case,[1] in response to a request for guidance from the Federal Service Impasses Panel. The Panel questioned the availability of "official" or paid time for employee-representatives negotiating local (or supplemental) labor agreements.[2]

The FLRA determined that agencies need not grant "official time" to employees for time engaged in negotiating such agreements. The FLRA reached this conclusion notwithstanding its recognition that the FLRS requires the granting of official time to employee-negotiators for time spent in negotiation of national or controlling (master) collective bargaining agreements.

Petitioner American Federation of Government Employees ("AFGE") challenges the FLRA's decision, arguing that the agency's interpretation is contrary to the plain language of the statute and inconsistent both with congressional intent and FLRA precedent. We agree and reverse.

## I

At the outset, we address an issue raised by the court *sua sponte* with respect to the reviewability of the agency's Interpretation and Guidance. As indicated in supplemental submissions filed pursuant to an October 12, 1984 order of this court, the parties, including the United States as intervenor, are in accord that the agency action under review here is final. Nothing further needs to be done by the FLRA, whose final word on the subject of official time for negotiation of "local" agreements is embodied in the Interpretation and Guidance. We also note that the term "order" as employed in section 7123(a) of the statute should be interpreted to permit direct review of a final agency interpretation, such as this one, promulgated after receipt of comments from interested parties. *See, e.g., City of Rochester v. Bond,* 603 F.2d 927, 933 n. 26 (D.C.Cir.1979) (noting that courts have construed "order" expansively for purposes of special review statutes,

"notably to permit direct review of regulations promulgated through informal notice-and-comment rulemaking").

While agreeing as to the finality of the agency's order, the parties divide on the question whether the issue is now ripe for review. AFGE and the FLRA are of one mind that ripeness requirements are fully met, but the United States demurs. All the parties agree, as do we, that the issue is fit for judicial resolution. The question before us is solely one of law, and the resolution of that question need not await the development of a factual record to facilitate its resolution.

But even with the first prong of the now-familiar ripeness inquiry having been met, there remains the question whether the impact on the party seeking review is sufficiently concrete to warrant judicial intervention at this stage. *See, e.g., Tennessee Gas Pipeline Co. v. FERC,* 736 F.2d 747 (D.C.Cir.1984); *Air New Zealand v. CAB,* 726 F.2d 832 (D.C.Cir.1984). On that score, the United States parts company with AFGE and FLRA, arguing that the Interpretation has not caused the Union "the concrete and immediate hardship necessary for review in this Court." Supplemental Memorandum of November 5, 1984, at 4. In the Government's view, all the Interpretation and Guidance has done is leave the matter of official time for local-level negotiations to the collective bargaining process and, thus, leaves standing a decision by the Federal Service Impasses Panel ordering the parties to include in the contract language giving local union negotiators up to thirty-two hours official time for their efforts. As the Government sees it, until such time, if at all, that a union negotiator has devoted more than thirty-two hours to local-level negotiations, AFGE will not face a concrete hardship.

 We disagree. We are persuaded that the impact on the Union is definite and concrete so as to satisfy the requirements

1. *Interpretation & Guidance,* Case No. 0–MC–7, 7 FLRA No. 105 (January 15, 1982) (*reprinted in* Petitioner's Brief as a Joint Appendix).

2. *See* 46 Fed.Reg. 38,404 (1981) (noting receipt of request for guidance, and soliciting written comments).

of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–53, 87 S.Ct. 1507, 1515–18, 18 L.Ed.2d 681 (1967). AFGE has, after all, been denied a claimed *statutory* entitlement to official time. In the FLRA's own words, section 7131(a) *"requires* an agency to grant official time to any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under the statute during the time the employee otherwise would be in a duty status." FLRA Initial Brief at 5 (emphasis added). If AFGE is correct in claiming that the statute provides a blanket authorization of official time for "duty status" time as opposed to "off-duty" time spent negotiating, and we believe it is,[3] then an authoritative rejection of the blanket nature of that entitlement is a concrete injury even if the impact on any particular union is not immediate. AFGE's claim that it is statutorily entitled to official time for negotiation of local agreements during what would otherwise have been duty status time has been firmly and finally rejected by the FLRA and, as the agency itself observes, the FLRA has applied the Interpretation of its rationale to a number of cases. This constitutes an impairment of rights, not a mere threat of future impairment. Having thus found the "order" in question to be ripe for review, we turn to the Union's substantive arguments.

## II

To address AFGE's specific contentions, it is necessary to examine briefly both the statutory provision governing the grant of official time and the FLRA's interpretation of that provision. An agency's grant of official time permits "employee negotiators to be paid as if they were at work, whenever they bargain during hours they would otherwise be on duty." *BATF, supra*, 104 S.Ct. at 441. The controlling statutory provision with respect to official time is set forth in section 7131(a), which provides:

Any employee representing an exclusive representative [an employee union] in the negotiation of *a collective bargaining agreement* under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding [sic], during the time the employee otherwise would be in a duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

5 U.S.C. § 7131(a) (1982) (emphasis added).

In interpreting this statutory language, the FLRA framed the question before it as follows:

Whether section 7131(a) ..., which authorizes official time to employees representing an exclusive representative in the negotiation of a collective bargaining agreement, applies to the negotiation of a local agreement which supplements a national or controlling (master) agreement.

7 FLRA at 682, Pet. Br. at JA 1. FLRA's resolution of this question rested squarely on its reading of the statutory term "a collective bargaining agreement." The FLRA first noted the definition of that term as set forth in section 7103(a)(8): "[A]n agreement entered into as a result of collective bargaining pursuant to the provisions of [the FLRS]." The definition of the term "collective bargaining," in turn, is drawn from section 7103(a)(12):

the performance of the *mutual obligation* of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached, but the obli-

---

**3.** See Petitioners' Reply Brief at 4. Section 7131(d) allows the agency and union to *negotiate* over *additional* grants of official time—*e.g.*, for off-duty hours spent in negotiations between the agency and union. *See infra* note 4.

gation referred to in this paragraph does not compel either party to agree to a proposal or to make a concession[.]
(Emphasis added).

In its decision, the FLRA observed initially that parties negotiating master agreements "are under the mutual obligation to bargain." Parties at the master agreement level "may agree to authorize representatives below [that] level ... to supplement provisions of the ... [master] agreement." 7 FLRA at 684, Pet. Br. at JA 3. In the FLRA's analysis, the critical distinction between master agreements and local or supplemental agreements is that the latter *may or may not* be negotiated, subject to the outcome of bargaining at the master agreement level. Because local agreements "are negotiated voluntarily pursuant to the agreement of the parties at the [master agreement] level," they are, in the FLRA's view, not negotiated "pursuant to a 'mutual obligation' to bargain." *Id.* The negotiation of local agreements, under this approach, is deemed to lie beyond the reach of section 7131(a)'s grant of official time, since such agreements are the result of the parties' voluntary action. The FLRA emphasized that its interpretation did not alter the availability of official time for time devoted at the master agreement level to the negotiation of "local issues," nor did it preclude agreement between the parties at the master level, pursuant to section 7131(d), for the provision of official time compensation for local agreement negotiations.[4] 7 FLRA at 684–85, Pet. Br. at JA 3–4.

This court's role in reviewing FLRA actions is delineated in section 7123(c), which provides that judicial "[r]eview of the [FLRA's] order shall be on the record in accordance with [5 U.S.C. § 706]." This latter provision, a familiar section of the Administrative Procedure Act, directs a re-

viewing court to hold unlawful and set aside only agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Our review of the FLRA's decision is also informed by the recent Supreme Court decision in *BATF, supra.* There, the Court explained that while the FLRA "is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the [FLRS] to the complexities' of federal labor relations," reviewing courts are not to " 'rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.' " 104 S.Ct. at 444 (citation omitted).

The FLRA's position in this case rests on a two-step analysis of the statute. First, the FLRA equates the term "mutual obligation" found in the definition of "collective bargaining" in section 7103(a)(12) with a requirement that a *statutory* obligation to bargain must exist before official time is due union employee-representatives. Second, the FLRA deems local negotiations, which are not required by statute, as voluntary in nature and, for this reason, beyond the provisions of section 7131(a).

We cannot accept either prong of the FLRA's analysis. In the first place, the FLRA's insistence that the term "mutual obligation" is equivalent to "statutory obligation" finds no basis in either the statutory language or the legislative history of the Act. Section 7131(a), the "official time" provision, by its own terms makes no distinction between master agreements and local agreements; neither do the relevant definitional sections of the FLRS. To the contrary, the official time provision speaks broadly of "a collective bargaining agree-

---

**4.** Section 7131(d) reads as follows:

Except as provided in the preceding subsections of this section—

(1) any employee representing an exclusive representative, or

(2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative,

shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

ment" and draws no distinction between a master agreement and a local agreement.

This by no means suggests, however, that Congress was unaware of the important role played by local agreements in federal labor-management relations. Congress specifically addressed the procedures for approving a local agreement in section 7114(c)(4). The fact that Congress saw fit not to make differing provisions for master and local agreements in section 7131(a) provides persuasive evidence that Congress intended no dissimilarities between the availability of official time for negotiations leading to these two types of agreements.

Secondly, the FLRA's characterization of local negotiations as "voluntary" in nature overlooks the fact that any local negotiations are undertaken by the parties only pursuant to agreement at the master level. Thus, the negotiation of a local agreement is derivative from the master agreement and appears no less the *result* of the underlying statutory obligation to bargain than the master agreement itself. This in no way renders local negotiations mandatory under the FLRS. Parties at the master agreement level remain free to agree to, or abstain from, the conduct of local agreement negotiations. However, once local negotiations are agreed upon, a "mutual obligation" to bargain exists at that level, thus triggering the provisions of section 7131(a).

AFGE's considerably more plausible reading of the statute is also more congruent with other policies of the FLRA. For example, under current practice if *local negotiations* reach an impasse, official time is in fact granted to employee-representatives for time spent in proceedings before the Federal Service Impasses Panel. To allow official time if local negotiations break down and reach the point of impasse, but to deny it for time spent in the normal course of local negotiations, is unreason-

able to the point of irrationality. Indeed, no plausible reason has been advanced by the FLRA to account for this anomaly arising from its crabbed construction of the pivotal statutory term, "a collective bargaining agreement."

The FLRA's position in this case is also difficult to square, as a practical matter, with its willingness in *BATF v. FLRA*, 672 F.2d 732 (9th Cir.1982), *rev'd*, —— U.S. ——, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), to order the grant of official time for "midterm negotiations" which indisputably dealt with wholly local issues. In that case, a union shop steward from the Fresno, California BATF office sought and received official time for his efforts in negotiating certain arrangements for a new office in Sacramento. The issues covered in these "midterm" negotiations were decidedly local, including "parking facilities, assignment of certain employees, and excused tardiness for the first week in the Sacramento facility." *Id.* at 734.[5] In spite of the fact that these negotiations did not implicate the entire nationwide contract, the FLRA and the Ninth Circuit reasoned that official time was due the employee under section 7131(a).

For the FLRA to require official time to be given for one class of local negotiations ("midterm negotiations") but not for another ("local agreement negotiations") is an arbitrary exercise of its authority. Such a policy is, in fact, belied by the Supreme Court's decision in *BATF*, which did not question the characterization of the negotiation of those local issues as "collective bargaining," and thus did not recognize the master-local distinction now being urged by the FLRA in substantially similar circumstances.

Finally, we note that the refusal to allow official time under section 7131(a) for local negotiations could strain the collective bar-

---

**5.** The employee also sought reimbursement for travel and per diem expenses. The FLRA and the Ninth Circuit agreed that he was entitled to this compensation under section 7131(a). The Supreme Court reversed the Ninth Circuit's affirmance of the FLRA's decision only with re-

spect to the propriety of granting employee-representatives' travel and per diem expenses. BATF did not seek Supreme Court review "of the FLRA's conclusion that § 7131(a) applies to mid-term negotiations." 104 S.Ct. at 443.

gaining process through the introduction of perverse incentives to both sides. Such an outcome would interfere with the realization of one of the primary goals of the FLRS—the promotion of collective bargaining. *See* 5 U.S.C. § 7101(a). It is undisputed that management representatives of federal agencies carry on local negotiations while on official time. Refusal to provide comparable treatment to employee representatives is obviously at odds with the goal of equalizing the positions of labor and management at the bargaining table.[6] This dissimilarity also provides an incentive to federal employee unions to seek to dispose of local issues at the master agreement level—regardless of how cumbersome this procedure might be—or, if local negotiations are undertaken, to force difficult issues to impasse, at which point the union representatives would indisputably be entitled to official time. On the other hand, denying official time to union representatives for local negotiations offers management an incentive to force as many issues

as possible to the local level, where their opponents will (barring impasse) be negotiating on their own time. These untoward effects are simply not addressed adequately by the possibility of master agreement-level negotiation of official time to be provided at the local level.

In short, the FLRA's miserly reading of the term "collective bargaining agreement" finds no support in the plain language or structure of the statute. What is more, the FLRA's strained interpretation creates tension with the purposes of the FLRS itself and with the broad policies of the FLRA. We are thus persuaded that this decision must be and hereby is

*Reversed.*

---

**6.** While the Supreme court in *BATF* rejected a policy-based argument for reimbursement of travel and per diem expenses, the decision plainly does not stand for the proposition that consideration of the policies underlying the FLRS is somehow suspect. In *BATF*, the policy arguments were used improperly in calling for the creation of a right to reimbursement which was mentioned nowhere in the statute itself. In the instant case, consideration is appropriately given to the policies underlying the statute in order that the specific language controlling the availability of official time may be interpreted consistently with the rest of the statute.