930 F.2d 1315
 137 L.R.R.M. (BNA) 2081
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL
3884, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
The Department of Veterans Affairs, Intervenor.
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
The Department of Veterans Affairs, Intervenor.
 Nos. 90-1379, 90-1380.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1990.
Decided April 16, 1991.
 
 Kevin M. Grile, Chicago, Ill., for petitioner.
 Denise Morelli, Washington, D.C., for respondent.
 
 
 1
 E. Roy Hawkens, Washington, D.C., for intervenor.
 
 
 2
 Before LAY, Chief Judge, FAGG, Circuit Judge, and LARSON,* Senior District Judge.
 
 
 3
 LARSON, Senior District Judge.
 
 
 4
 Petitioner American Federation of Government Employees, Local 3884, represents registered nurses employed at the Veterans Administration Medical Center in Fargo, North Dakota. The union appeals from two adverse Federal Labor Relations Authority decisions, which have been consolidated before this Court for decision. In one case, officials at the Fargo VA Medical Center refused to bargain with the union over proposed changes in the frequency and methods of documentation required by nurses. In the other case, Fargo VA officials refused to provide the union with information the union had requested in order to determine whether the VA had acted contrary to an existing collective bargaining agreement, which required the VA to hire the best qualified nurses for certain specialty positions.
 
 
 5
 In both cases, the FLRA concluded it lacked jurisdiction to consider the union's contentions. The Authority reasoned that because the nurses were classified as medical professionals under Title 38, the VA was under no duty to bargain with them under the Civil Service Reform Act of 1978. The Authority further concluded that while the VA and the nurses' union could voluntarily enter into an agreement regarding the nurses' working conditions, any such agreement was not enforceable by the Authority. The FLRA's position stems from the agency's interpretation of a recent District of Columbia Circuit Court decision, Colorado Nurses Association v. FLRA, 851 F.2d 1486 (D.C.Cir.1988), which interpreted 38 U.S.C. Sec. 4108 as granting the VA exclusive authority over the working conditions of medical professionals in VA hospitals.
 
 
 6
 The union argues on appeal that the FLRA has misconstrued the Colorado Nurses decision, which did not involve enforcement of an existing collective bargaining agreement. The union further contends that the Colorado Nurses decision conflicts with this Court's decision in Veterans Administration Medical Center, Minneapolis v. FLRA, 705 F.2d 953 (8th Cir.1983). The union maintains VA officials have a duty to abide by the collective bargaining agreement currently in effect and must bargain with professional nurses over proposed changes in their working conditions under the Civil Service Reform Act unless those proposals are inconsistent with specific provisions of Title 38 or specific regulations adopted by the Secretary of Veterans Affairs. The union urges this Court to reverse both FLRA decisions.
 
 
 7
 We agree with the Colorado Nurses court that the VA has no mandatory duty under the Civil Service Reform Act to bargain with nurses over working conditions, because Title 38 grants the Secretary the authority to prescribe the working conditions of medical professionals employed by the VA. Accordingly, we affirm the FLRA's dismissal of the union's negotiability appeals. We reverse the FLRA's dismissal of the union's unfair labor practice petition, however, because we find the collective bargaining agreement the VA voluntarily entered into with the union is enforceable under the Civil Service Reform Act.
 
 I.
 
 8
 Consideration of the issues presented in these cases requires an understanding of two statutory schemes: chapter 73 of Title 38, 38 U.S.C. Secs. 4101-4119, which governs the activities of the Veterans Health Services and Research Administration, formerly the Department of Medicine and Surgery within the Veterans Administration,[1] and chapter 71 of Title 5, 5 U.S.C. Secs. 7101-7135, which governs collective bargaining rights for federal employees generally.
 
 
 9
 A. Title 38 and the Department of Medicine and Surgery
 
 
 10
 The Department of Medicine and Surgery (DM & S) was created in 1946 to provide "a complete medical and hospital service ... for the medical care and treatment of veterans." Veterans' Administration--Department of Medicine and Surgery, Pub.L. No. 293, Sec. 1 (1946) (codified at 38 U.S.C. Sec. 4101(a)). The Department, now the Veterans Health Services and Research Administration, operates the largest single medical care delivery system in the United States. See H.R.Rep. No. 96-958, 96th Cong. 2d Sess. 2 (1980). When the DM & S was first created, there was no union activity on the part of any federal employees, who were hired, fired, and promoted under the civil service system established by Title 5. See generally 5 U.S.C. Secs. 3301, 3361, 4304, 5101, 6101. Concerned that the VA had been unable to attract qualified medical professionals under the civil service system's regulations and rates of pay, Congress enacted provisions specifically relating to the hiring, promotion, pay, hours and conditions of employment, retirement, and discipline of health care professionals employed by the DM & S. Pub.L. No. 293, Secs. 2-15; S.Rep. No. 858 (1945), reprinted in 1945 U.S.Code Cong. & Admin.News 956, 957-59. See 38 U.S.C. Secs. 4105-4110. The nurses represented by petitioner are among the health care professionals covered by Title 38 provisions. See id.
 
 
 11
 From the time of enactment in 1946, section 4108(a) of the DM & S statute had provided that
 
 
 12
 Notwithstanding any law, Executive order, or regulation, the Administrator [now the Secretary of Veterans Affairs] shall prescribe by regulation the hours and conditions of employment and leaves of absence of doctors, dentists, and nurses.
 
 
 13
 Pub.L. No. 293, Sec. 7(b) (1946), reprinted in 1945 U.S.Code Cong. & Admin.News 652, 654.[2]
 
 
 14
 B. Collective Bargaining by Title 38 Professionals
 
 
 15
 The record in this case does not reveal when negotiations first began between VA officials and unions representing Title 38 employees. Collective bargaining rights for federal workers generally were first recognized in 1969 under Executive Order No. 11,491. Exec.Order No. 11,491, 3 C.F.R. 861 (1966-70), reprinted in 1969 U.S.Code Cong. & Admin.News 2948. See 5 U.S.C.A. Sec. 7101, Historical Note. The Order required federal agencies to bargain with a properly certified union over "personnel policies and practices and matters affecting working conditions, so far as may be appropriate under applicable laws and regulations." Exec.Order No. 11,491 Sec. 11(a), reprinted in 1969 U.S.Code Cong. & Admin.News at 2953-54.
 
 
 16
 In 1974, officials of the Fargo VA Medical Center entered into a collective bargaining agreement with the North Dakota State Nurses' Association, then the exclusive representative of the nurses now represented by petitioner herein. This agreement was amended on December 30, 1976, to provide in article XII as follows:
 
 
 17
 Vacancies in the positions of head nurse, supervisor, specialty positions and newly created positions will be filled from among the best qualified and available nurses. The Center agrees that such selection will not be based solely on educational achievement, and will take every means to insure that the principles of equal opportunity are strictly adhered to.
 
 
 18
 Fargo VA officials thus had already engaged in collective bargaining with professional nurses when Congress enacted the Civil Service Reform Act of 1978. Codified as the Labor-Management Relations chapter of Title 5, the purpose of the Act was "to lay the foundation for open and mutually beneficial labor-management relations throughout the federal sector." Veterans Administration Medical Center, Minneapolis, Minnesota v. FLRA, 705 F.2d 953, 957 (8th Cir.1983). The Act guarantees that "[e]ach employee shall have the right ... to engage in collective bargaining with respect to conditions of employment," 5 U.S.C. Sec. 7102,[3] but preserves the authority of federal agency management officials (1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency, and (2) to hire, assign, direct, layoff, or discipline employees. Id. Sec. 7106(a). The Act requires an agency[4] to recognize, bargain in good faith, and consult with a properly certified union in an effort to reach agreement with respect to conditions of employment. Id. Secs. 7114, 7117. The general duty to bargain is limited to matters "not inconsistent with any Federal law" or not "specifically provided for by Federal statute." Id. Secs. 7117; 7103(a)(14)(C).[5] See generally Fort Stewart Schools v. FLRA, --- U.S. ----, 110 S.Ct. 2043, 2046-49, 109 L.Ed.2d 659 (1990). The Federal Labor Relations Authority was created to administer the Act. 5 U.S.C. Secs. 7104-05.
 
 
 19
 On February 28, 1980, the Federal Labor Relations Authority certified the American Federation of Government Employees, AFL-CIO, as the exclusive representative of a national consolidated bargaining unit consisting of certain VA professional employees, including nurses.[6] In April 1980, the VA entered into an interim collective bargaining agreement with the union. Because no Master Agreement has ever been reached between the VA and the union, this Interim Agreement remains in effect and provides in article 4 that:
 
 
 20
 The terms of any local agreement which was in effect at the time of the consolidated unit certification shall remain in effect until final approval of the Master Agreement.[7]
 
 
 21
 The same year the VA reached an interim agreement with the American Federation of Government Employees, Congress amended the DM & S statute in an effort to enhance the VA's ability "to recruit and retain sufficient numbers of capable, qualified health-care professionals and personnel." S.Rep. No. 96-747, 96th Cong. 2d Sess. 26 (1980), reprinted in 1980 U.S.Code Cong. & Admin.News 2463, 2464. The 1980 DM & S amendments included several provisions relating to personnel. With regard to nurses, the 1980 amendments authorized a pilot program and study to evaluate the impact of various administrative actions on the VA's ability to recruit and retain qualified nurses, amended Title 38 provisions relating to premium pay, and provided the VA Administrator with authority to modify rates of pay as necessary on a local, regional, or nationwide basis to meet rates paid by private hospitals. See Veterans' Administration Health-Care Amendments of 1980, Pub.L. No. 96-330, Secs. 111-112, 118, 94 Stat. 1037-38, 1040-41 (1980); Explanatory Statement of Compromise Agreement on H.R. 7102/S. 2534, 1980 U.S.Code Cong. & Admin.News 2557, 2562-63, 2565-66. Although the Senate bill contained express language requiring the Administrator to consult with the exclusive representative of any employees "as is required under any collective bargaining agreement" prior to implementing several of these provisions, the bill enacted by the Congress excluded this language. The Explanatory Statement of the Compromise Agreement indicated the reason for the deletion was to avoid confusion. The Statement explains:
 
 
 22
 It was the Senate's intention, as expressed in the Senate Committee report, in including the consultation provisions to assure that nothing in the bill could be construed as negating recognized collective bargaining rights, including consultation rights. Those provisions are not included in the compromise bill in recognition of the Committees' agreement that such a specific reference to such rights is unnecessary and could engender confusion. In deleting those provisions, the Committees wish to make clear that they do not intend that any of the changes made by the legislation to the VA's health-care personnel authorities detract in any way from employee rights under existing collective bargaining agreements between the VA and its employees.
 
 
 23
 Explanatory Statement, 1980 U.S.Code Cong. & Admin.News at 2563.
 
 
 24
 Other sections of the 1980 amendments spoke directly to the relationship between Title 38 and Title 5 civil service system provisions. Section 105 of the amendments provided that Title 38 employees were not to be included in the Senior Executive Service established by the Civil Service Reform Act of 1978. Pub.L. No. 96-330, Sec. 105, 94 Stat. 1036-37 (1980). See 5 U.S.C. Secs. 3136 & 3397.[8] Section 116 added a new section 4119 to Title 38, which states:
 
 
 25
 Notwithstanding any other provision of law, no provision of title 5 or of any other law pertaining to the civil service system which is inconsistent with any provision of this subchapter shall be considered to supersede, override, or otherwise modify such provision of this subchapter except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this subchapter, for such provision to be superseded, overridden, or otherwise modified.
 
 
 26
 Pub.L. No. 96-330, Sec. 116, 94 Stat. 1030, 1039 (1980) (codified at 38 U.S.C. Sec. 4119). This provision was inserted in the final bill in response to section 102 of the House bill. In addition to exempting Title 38 professionals from the Senior Executive Service, section 102(c) of the House bill would have provided that "[p]art-time appointments under [section 4114 of the DM & S statute] shall be made without regard to chapter 34 of title 5," which governs general civil service part-time employment. See H.R. 7102, 96th Cong. 2d Sess. Sec. 102(c). The Senate bill contained no similar language regarding part-time positions, and the Explanatory Statement reveals only that in reaching a compromise, committee members agreed to
 
 
 27
 an amendment to clarify that the general relationship between title 38 medical personnel system provisions in subchapter I of chapter 73 of title 38 and provisions in title 5 or elsewhere pertaining to the civil service personnel system is such that no provisions from title 5 or elsewhere (whether heretofore or hereafter enacted) shall be considered to supersede, override, or otherwise modify title 38 provisions unless such other provision does so expressly by specific reference to the title 38 provision.
 
 
 28
 Explanatory Statement, 1980 U.S.Code Cong. & Admin.News at 2565.
 
 C. VA Minneapolis
 
 29
 Shortly after enactment of the 1980 DM & S amendments, this Court was called upon to resolve the interplay between Title 5 and Title 38 provisions. In Veterans Administration Medical Center, Minneapolis, Minnesota v. FLRA, 705 F.2d 953 (8th Cir.1983), the VA appealed from an order of the Federal Labor Relations Authority requiring the VA to bargain with the American Federation of Government Employees, Local 3669, over certain proposals presented by the union regarding disciplinary actions. The FLRA held the proposals were negotiable because they provided for alternative dispute resolution procedures as permitted by section 7121 of the Civil Service Reform Act. See 5 U.S.C. Sec. 7121(e)(1).[9] The VA did not dispute the proposition that DM & S professionals were generally covered by the Civil Service Reform Act, but maintained that section 4110 of the DM & S statute provided the exclusive means for disciplining DM & S professionals. VA Minneapolis, 705 F.2d at 955, 957 n. 5.
 
 
 30
 In analyzing the VA's position, the VA Minneapolis court reviewed the legislative history and purpose of the 1946 DM & S statute and the 1978 Civil Service Reform Act. The court indicated that "[i]n the absence of further guidance from Congress, we would resolve the conflict between these two statutes in favor of the duty to bargain over alternative grievance and arbitration procedures mandated in 5 U.S.C. Sec. 7121(e)(1)," based on language in the legislative history of section 7121 which specifically referred to providing an option for employees under the Title 38 personnel system. Id. at 957-58.[10] Turning to the 1980 amendments to the DM & S statute, however, the court concluded that the express language used by Congress in the new section 4119 required the court to "resolve any conflict between section 4110 and the duty to bargain under section 7121 of the Civil Service Reform Act in favor of the continued applicability of the Veterans Administration law." Id. at 958. In dicta, the court noted that section 4110 did not create procedures for the resolution of disputes over other personnel decisions common to all employment situations, such as vacation assignments or working conditions, and indicated that its decision did not preclude union proposals to resolve disputes over such matters. Id.
 
 D. Colorado Nurses
 
 31
 The VA's obligation to negotiate with DM & S professionals over non-disciplinary grievance procedures and conditions of employment was squarely presented in Colorado Nurses Association v. FLRA, 851 F.2d 1486 (D.C.Cir.1988). The Colorado Nurses Association had begun the process of negotiating a collective bargaining agreement with VA Medical Center officials in Fort Lyons, Colorado. The union had made proposals concerning work schedules and a grievance procedure for disputes regarding conditions of employment unrelated to disciplinary actions. The VA refused to bargain over any of the proposals, claiming that section 4108 of the DM & S statute gave the VA Administrator the exclusive authority to determine working conditions. The FLRA rejected this argument, but found that two of the union's proposals were nonnegotiable because they would infringe upon rights specifically reserved to management under the Civil Service Reform Act, 5 U.S.C. Sec. 7106. Colorado Nurses, 851 F.2d at 1487-88.
 
 
 32
 The D.C. Circuit reversed the FLRA, holding that section 4108(a) of the DM & S statute requiring the Administrator of Veterans Affairs to prescribe by regulation the hours and conditions of employment of DM & S professionals granted exclusive authority to the Administrator to determine the working conditions of DM & S professionals. Id. at 1492. The Colorado Nurses court began its analysis by viewing section 4108(a) of the DM & S statute as an integral part of an independent DM & S personnel system Congress created in 1946. Id. at 1489. Rejecting the notion that the Civil Service Reform Act impliedly overrode provisions of the DM & S statute, the court concluded that provisions of the Civil Service Reform Act "can be just as intrusive as standards imposed by civil service laws." Id. at 1491. Finally, the court held that even assuming the Civil Service Reform Act applied to DM & S professionals in 1978, Congress' passage of section 4119 in 1980 reaffirmed the preeminence of the DM & S statute with regard to DM & S professional personnel. Id. at 1492.
 
 
 33
 The court reconciled its holding with portions of the 1980 legislative history which refer to the need to respect DM & S employees' rights under existing collective bargaining agreements by noting that the VA Administrator could voluntarily agree to recognize and negotiate with a union over terms and conditions of employment. According to the court, the Explanatory Statement accompanying the 1980 legislation "may therefore reasonably be read as an indication that Congress did not wish to upset the settled expectations of those VA employees working 'under existing collective bargaining agreements.' " Id. at 1491 (emphasis supplied by Colorado Nurses court).
 
 II.
 
 34
 With this legal background in mind, we turn to the facts which gave rise to the appeals now before this Court. Shortly after the 1980 amendments to the DM & S statute, Fargo VA officials recognized Local 3884 as the exclusive bargaining representative for nurses employed at the Fargo Medical Center. In 1981, these registered nurses were included as part of the national consolidated unit represented by the American Federation of Government Employees and became parties to the Interim Agreement reached between the union and the VA in Washington. Pursuant to the Interim Agreement, Fargo officials continued the practices which had been developed under the local agreement which had previously been reached between the agency and Local 3884's predecessor, the North Dakota State Nurses' Association.
 
 
 35
 One of these past practices involved supplying the union, upon its request, with information on newly hired nurses to allow the union to evaluate whether any nurses had been hired contrary to the provisions of article XII of the collective bargaining agreement. In 1984, union president Larney Worth requested and received 80 to 90 VA forms, which Worth and union vice-president Deb Cederholm reviewed to determine whether the VA had been complying with article XII by selecting the best qualified candidates. Worth requested similar information in 1987, using a form which had been agreed to by the parties in settlement of a prior FLRA case. Worth made the request after a union member had failed to receive a requested transfer to an operating room "specialty position" and after Worth had received additional information to suggest that the VA had not been complying with article XII.[11] The VA refused Worth's 1987 request for information on privacy grounds, and the union filed an unfair labor practice charge with the Federal Labor Relations Authority.
 
 
 36
 In answer to the union's petition, the VA admitted that the union was a labor organization within the meaning of 5 U.S.C. Sec. 7103(a)(4), that the VA was an agency within the meaning of 5 U.S.C. Sec. 7103(a)(3), and that the union and the VA were parties to an Interim Agreement covering registered nurses employed by the Fargo VA. At the hearing conducted before the Administrative Law Judge, Personnel Officer Ray Johnson affirmed that the Interim Agreement was in effect between the VA and the union and that the VA continued to respect article XII of the prior Nurses' Association agreement as a past practice under the Interim Agreement.
 
 
 37
 After the hearing, but prior to the ALJ's issuance of his decision, the D.C. Circuit's Colorado Nurses opinion was issued. In a "DM & S Hotline Statement," the VA in Washington advised local and regional VA officials that it was studying the decision and would be establishing an agency position on implementation. The statement further advised that "[i]n the meantime, all facilities should continue the present posture of maintaining status quo in dealings with union officials representing Title 38 employees until further VACO directive."
 
 
 38
 Fargo VA officials supplied the Colorado Nurses decision to the ALJ by letter. After studying the decision and the facts presented to him, the ALJ concluded the decision did not preclude the union from filing grievances concerning the interpretation of language in a collective bargaining agreement the VA had previously agreed to. On the merits, the ALJ found the union had a right to obtain the information it had requested, the limited disclosure of which would not violate any Privacy Act provision. The VA filed exceptions to the ALJ's decision with the FLRA.
 
 
 39
 The FLRA considered the case, along with two negotiability appeals which were submitted by the union. The negotiability appeals pertained to proposals made by the union in response to notices the union received regarding proposed changes in the working conditions of professional nurses. The first notice was received in October, 1987, when Personnel Officer Ray Johnson gave the union notice of a proposed change in reporting requirements for nurses who observe incidents which result in harm or which have the potential for causing harm to the patients or staff. The union responded with a request for bargaining over the proposed change. Thereafter, the VA revised its proposal, and the revised procedures were again forwarded to the union. The union again requested that the VA bargain over the proposed change and forwarded written proposals to the VA for consideration.
 
 
 40
 Before receiving a formal response to its demand for bargaining, the union received notice in March, 1989, of another proposed change regarding nursing documentation. The proposed change required each patient to receive, at a minimum, one daily observation nursing progress note. The union requested a short bargaining session, and proposed that the VA more specifically assign responsibility for the daily observation note.
 
 
 41
 The VA responded to both demands for bargaining in April, 1989, by indicating that the union's proposals "conflict with the management rights of the Agency and with Agency regulations and are, therefore, nonnegotiable." The union challenged the VA's refusal to bargain by submitting negotiability appeals to the FLRA. The FLRA dismissed both the negotiability appeals and the unfair labor practice petition in January, 1990. The Authority concluded, based on its interpretation of section 4108(a) of the DM & S statute, that the VA had no obligation toward members of the nurses' union which could be enforced by the FLRA under the Civil Service Reform Act, even in situations where the VA had agreed to be bound by a collective bargaining agreement. The FLRA reasoned that any collective bargaining agreement was not a "collective bargaining agreement" under the Civil Service Reform Act, 5 U.S.C. Sec. 7103(a)(8), and that "the decision of the Administrator, pursuant to his discretion under [the DM & S statute], to comply with the parties' interim agreement ... does not subject the Administrator to the [Civil Service Reform Act] statute's mechanisms for enforcing the parties' rights and obligations under that agreement."
 
 III.
 
 42
 The union's appeal requires the court to again consider the interplay between provisions of the DM & S statute and the Civil Service Reform Act. We examine first the VA's obligation to bargain with Title 38 employees over proposed changes in their working conditions.
 
 
 43
 A. The VA's Duty to Negotiate Over Working Conditions
 
 
 44
 Citing VA Minneapolis, the union argues its nurses are "employees" under the Civil Service Reform Act who have the right to organize into unions and demand that the VA bargain in good faith with them in an effort to reach an agreement over the proposed changes in their working conditions. See 5 U.S.C. Sec. 7117. The union maintains that nothing in section 4108(a) or section 4119 of the DM & S statute precludes this right.
 
 
 45
 The VA and FLRA concede there is language in the VA Minneapolis decision which would support the union's position. Both submit, however, that the VA Minneapolis court was presented only with the issue of the exclusive nature of the disciplinary procedures contained in section 4110 of the DM & S statute; the effect of section 4108(a) on the Administrator's duty to bargain over working conditions was neither presented to nor decided by the court. See Colorado Nurses, 851 F.2d at 1491 (distinguishing VA Minneapolis on this basis). This observation is undoubtedly true, since at the time of the VA Minneapolis decision both agencies appeared to concede that the Civil Service Reform Act required the VA to bargain with Title 38 employees over matters unrelated to discipline, including the employees' working conditions. See VA Minneapolis, 705 F.2d at 957 n. 5; Veterans Administration Medical Center, Northport, New York, 732 F.2d 1128, 1131, 1132 (2d Cir.1984). Both agencies now argue the VA has no duty to bargain over working conditions under the Civil Service Reform Act, relying on sections 4108(a) and 4119 of the DM & S statute.[12]
 
 
 46
 As in VA Minneapolis, we begin with the proposition that the Civil Service Reform Act applies to the VA, absent other overriding provisions of law. See VA Minneapolis, 705 F.2d at 955. Section 7102 of the Act grants employees the right to bargain over conditions of employment, defined to include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except ... to the extent such matters are specifically provided for by Federal statute." 5 U.S.C. Secs. 7102, 7103(a)(14). The VA argues that working conditions are beyond the scope of mandatory bargaining under the Civil Service Reform Act because the matter of working conditions for DM & S employees is "specifically provided for by Federal statute," namely, section 4108(a) of the DM & S statute. See 5 U.S.C. Sec. 7103(a)(14)(C); id. Sec. 7117 (duty to bargain limited "to the extent not inconsistent with Federal law").
 
 
 47
 Section 4108(a) of the DM & S statute provides that "[n]otwithstanding any law, Executive order, or regulation," the Administrator of Veterans Affairs, now the Secretary of Veterans Affairs,[13] "shall prescribe by regulation the hours and conditions of employment" of Title 38 professional employees. 38 U.S.C. Sec. 4108(a). Pursuant to the authority granted in section 4108, the VA has issued a manual containing "those policies which are applicable to the overall conduct of the personnel program for those subject to 38 U.S.C. ch. 73 [DM & S professionals]." VA Personnel Policy Manual, MP-5, Part II 1-1 (June 1, 1964). The Manual has chapters pertaining to appointments (chapter 2), pay (chapter 3), probationary employment (chapter 4), advancement (chapter 5), proficiency evaluations (chapter 6), duty and leave (chapter 7), disciplinary actions, grievances and hearings (chapter 8), separations (chapter 9), physical requirements (chapter 10), recruitment and placement (chapter 11), overseas employment of non-U.S. citizens under 38 U.S.C. Sec. 4114(a)(1)(A) (chapter 12), and outside professional activities (chapter 13). See VA Personnel Policy Manual, MP-5, Part II & DM & S Supplement to VA Personnel Policy Manual, MP-5, Part II.
 
 
 48
 Both the VA and the FLRA also cite section 4119 of the DM & S statute, which indicates, again "[n]otwithstanding any other provision of law," that no provision of Title 5 pertaining to the civil service system which is inconsistent with any provision of the DM & S statute shall be considered to "supersede, override or otherwise modify" the DM & S statute unless the Title 5 provision specifically indicates that the Title 38 provision is to be overridden or modified. 38 U.S.C. Sec. 4119. According to the VA Minneapolis court, section 4119 requires us to resolve any conflict between the DM & S statute and the Civil Service Reform Act in favor of the DM & S statute. VA Minneapolis, 705 F.2d at 958.[14]
 
 
 49
 In finding section 7121 of the Civil Service Reform Act conflicted with section 4110 of the DM & S statute, the VA Minneapolis court reviewed the legislative history of section 4110 and concluded that when Congress enacted the DM & S statute in 1946, it intended the section 4110 disciplinary procedures to be the exclusive means for disciplining DM & S professionals. The concept that these procedures were to be exclusive conflicted with the union's alternative grievance procedure proposals; hence, under section 4119 the VA had no obligation to bargain with the union over these procedures. Id. at 957.
 
 
 50
 The VA and the FLRA argue Congress intended the same exclusivity with regard to the Secretary's authority to set hours and conditions of employment pursuant to section 4108(a), and the Colorado Nurses court agreed. See Colorado Nurses, 851 F.2d at 1489. The agencies argue before this Court that because the Civil Service Reform Act's mandatory duty to bargain over working conditions is inconsistent with the Secretary's exclusive authority to set these conditions, the DM & S statute must prevail.
 
 
 51
 The union responds that the general authority to set working conditions contained in section 4108 is different from the specific disciplinary procedures Congress addressed in section 4110. The union attempts, in the words of the Colorado Nurses court, "to drive an analytical wedge between [section 4108] and other provisions of the [DM & S] law that are admittedly exclusive in their application." Colorado Nurses, 851 F.2d at 1489. The sparse legislative history of section 4108 reveals Congressional concern over the rigid application of civil service rules in the context of providing a professional service. See 91 Cong. Rec. 11,662-63 (1945).[15] This same concern motivated Congress to provide a more efficient disciplinary scheme in section 4110. The union has failed to provide any convincing support for the proposition that Congress intended exclusivity in matters of discipline, but did not so intend with regard to the hours and conditions of employment of Title 38 employees.
 
 
 52
 The union further argues that its proposals regarding changes in nursing documentation are not "inconsistent" with the Secretary's authority to prescribe regulations concerning working conditions so long as the subject of documentation is not covered by any provision in the VA Personnel Policy Manual. The union urges us to remand the negotiability issues to the FLRA for a determination of whether any of the union's specific proposals regarding nursing documentation are contrary to any Personnel Policy Manual provisions.
 
 
 53
 The VA and the FLRA maintain that any inconsistency between section 4108 and the duty to bargain over working conditions derives not from actual conflicts between existing regulations or provisions in the Personnel Manual and specific union proposals. Rather, they argue the inconsistency stems from the Secretary's authority to set hours and conditions of employment "[n]otwithstanding any law, Executive order, or regulation." 38 U.S.C. Sec. 4108(a). According to the agencies, a mandatory duty to bargain over any proposals, whether over an issue dealt with in the Personnel Manual or not, conflicts with the Secretary's exclusive authority to determine hours and conditions of employment.
 
 
 54
 In VA Minneapolis, this Court found an inconsistency between the alternate grievance procedures proposed by the union and the disciplinary peer review board procedure set forth in section 4110 even when the proposed procedure culminated in final review by the Administrator (now the Secretary), because the union's proposal added "red tape" which conflicted with Congress' attempt to simplify disciplinary procedures. VA Minneapolis, 705 F.2d at 957 n. 4. The same inconsistency is present in the case at bar with regard to the Secretary's duty to bargain over working conditions. Requiring the VA to bargain over the changes in reporting procedures could subject the VA to a Federal Service Impasses Panel order forcing adoption of the union's proposals. See 5 U.S.C. Sec. 7119.[16] It is the compulsory nature of bargaining over working conditions, not any particular union proposal, which conflicts with Congress' expressed intent that the Secretary be allowed to act independently of all other laws, Executive orders, and regulations in establishing the hours and conditions of employment for DM & S professionals. See Colorado Nurses, 851 F.2d at 1491-92.
 
 
 55
 We thus hold that assuming the Civil Service Reform Act requires mandatory bargaining over conditions of employment for Title 38 employees, the express language of the DM & S statute and the reasoning employed by this Court in VA Minneapolis requires us to resolve any conflict between the DM & S statute and the Civil Service Reform Act in favor of the DM & S provisions. The Authority's decision in Case No. 90-1379, 34 FLRA No. 40, dismissing the union's negotiability appeals is therefore affirmed.
 
 
 56
 B. The FLRA's Jurisdiction Over An Existing Collective Bargaining Agreement
 
 
 57
 We turn now to the question of the Authority's jurisdiction to enforce a collective bargaining agreement which the VA has voluntarily entered into with the union. The VA and the FLRA argue that even though the VA has exercised the authority granted under section 4108 to enter into a collective bargaining agreement with the union, that agreement is not enforceable by the FLRA.
 
 
 58
 In rejecting the union's claim that the VA must bargain over working conditions, the Colorado Nurses court specifically observed that section 4108(a) "does not preclude the VA from choosing to negotiate about particular matters." Colorado Nurses, 851 F.2d at 1491. The court also made reference to the legislative history of the 1980 DM & S amendments, which the court interpreted as "an indication that Congress did not wish to upset the settled expectations of those VA employees working 'under existing collective bargaining agreements.' " Id. (citing Explanatory Statement of Compromise Agreement on H.R. 7102/S. 2534, 1980 U.S.Code Cong. & Admin.News 2557, 2563) (emphasis supplied by Colorado Nurses court).
 
 
 59
 In its answer to the unfair labor practice petition filed by the union, the VA conceded that it was an "agency" covered by the Civil Service Reform Act, that the union was a "labor organization" under the terms of the Act, and that the VA had agreed to abide by the Interim Agreement, which remained in force. In testimony before the ALJ, Fargo VA Personnel Officer Ray Johnson affirmed that the VA continued to respect the provisions of article XII of the Nurses' Association agreement as a past practice under article 4 of the Interim Agreement.[17]
 
 
 60
 The FLRA reasoned that because the VA had no mandatory duty to bargain over working conditions under the Civil Service Reform Act, the collective bargaining agreement in effect between the VA and the union did not fit the definition of "collective bargaining agreement" under the Act and the Authority was without jurisdiction to enforce it. See 5 U.S.C. Sec. 7103(a)(8).[18] The union urges us to reject the FLRA's "miserly reading of the term 'collective bargaining agreement,' " citing American Federation of Government Employees, AFL-CIO v. FLRA, 750 F.2d 143, 146, 148 (D.C.Cir.1984).
 
 
 61
 In the American Federation case, the FLRA contended, as it does here, that collective bargaining agreements which are voluntarily negotiated fall outside the term "collective bargaining agreement" under the Civil Service Reform Act. Id. While the issue arose in a different context from that presented here, we find the Authority's "crabbed construction" of the term "collective bargaining agreement" is equally unwarranted in this case. See id. As the union points out, the Civil Service Reform Act itself contemplates that certain issues are negotiable "at the election of the agency," 5 U.S.C. Sec. 7106(b)(1),[19] and the Authority has exercised jurisdiction over agreements reached as a result of these voluntary negotiations. See Local 1917, American Federation of Government Employees and U.S. Immigration and Naturalization Service, Eastern Region, 13 FLRA 77, 78 (1983).
 
 
 62
 The FLRA argues that comparing an agency's voluntary bargaining agreement under section 7106(b)(1) with the VA's voluntary bargaining agreement is like comparing "apples and oranges" because the VA is acting independently of Title 5 provisions. We cannot agree. In VA Minneapolis, this Court ruled that the provisions of the Civil Service Reform Act applied to the VA "absent other overriding provisions of law." VA Minneapolis, 705 F.2d at 955. Unlike the issue of mandatory bargaining discussed above, section 4108(a) of the DM & S statute does not preclude the VA from engaging in voluntary bargaining over terms and conditions of employment. See Colorado Nurses, 851 F.2d at 1491. Moreover, because voluntary bargaining is not inconsistent with the DM & S statute, section 4119 does not apply and cannot be read to preclude the application of any Title 5 provisions. See VA Minneapolis, 705 F.2d at 956 n. 3. In short, there is nothing in the DM & S statute which conflicts with the FLRA's assertion of jurisdiction over a collective bargaining agreement the VA has voluntarily agreed to abide by.
 
 
 63
 The agencies' position that the FLRA lacks jurisdiction over the VA's voluntary agreement with the union renders that agreement unenforceable. Nothing in the language or legislative history of either the DM & S statute or the Civil Service Reform Act supports this result. To the contrary, there is ample evidence that when Congress passed the 1978 Civil Service Reform Act, it believed Title 38 employees would be covered by its provisions.[20] There is also ample evidence that when Congress amended the DM & S statute in 1980, it knew that the VA had entered into collective bargaining agreements with Title 38 employees, and it did not wish to "detract in any way from employee rights under existing collective bargaining agreements between the VA and its employees." Explanatory Statement, 1980 U.S.Code Cong. & Admin.News at 2563.
 
 
 64
 For these reasons, we must reject as unreasonable the FLRA's position that it lacks any jurisdiction over existing collective bargaining agreements with Title 38 employees. We hold the FLRA has jurisdiction over disputes under collective bargaining agreements the VA has voluntarily agreed to abide by, and accordingly we reverse the FLRA's dismissal of the union's unfair labor practice petition in Case No. 90-1380, 34 FLRA No. 40, which was brought pursuant to the terms of such an agreement.
 
 IV.
 
 65
 Whether because the working conditions of Title 38 employees are "specifically provided for by Federal statute," 5 U.S.C. Sec. 7103(a)(14)(C), or because any conflict between the Civil Service Reform Act and the DM & S statute must be resolved in favor of the latter, we agree with the Colorado Nurses court that the FLRA lacks jurisdiction to compel the VA to engage in collective bargaining over the conditions of employment of Title 38 professional employees. We also agree with the D.C.Circuit's observation that nothing in the DM & S statute precludes the VA from voluntarily entering into a collective bargaining agreement with a union representing Title 38 employees, and we reject the contention that the DM & S statute precludes the FLRA from asserting jurisdiction over such a collective bargaining agreement. The decision of the FLRA dismissing the union's negotiability appeals is therefore affirmed, but the FLRA's decision rejecting jurisdiction of the union's unfair labor practice petition, which arises from an existing collective bargaining agreement between the union and the VA, is hereby reversed.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 In 1988, Congress redesignated the Department of Medicine and Surgery as the Veterans Health Services and Research Administration. Department of Veterans Affairs Act, Pub.L. No. 100-527, Secs. 6, 10, 102 Stat. 2640, 2641 (1988). The 1988 legislation also replaced the Veterans Administration and the Administrator of Veterans Affairs with the Department of Veterans Affairs, headed by the Secretary of Veterans Affairs. Id. Secs. 2, 10, 102 Stat. 2635, 2641 (1988)
 
 
 [2]
 Section 4108 was subsequently amended to add podiatrists, optometrists, physician assistants, and expanded-function dental auxiliaries to the list of Title 38 professionals. See Veterans' Administration Physician & Dentist Pay Comparability Act of 1975, Pub.L. No. 94-123, Sec. 5, 89 Stat. 669, 675-76 (1975); Veterans Omnibus Health Care Act of 1976, Pub.L. No. 94-581, Sec. 110, 90 Stat. 2842, 2848-49 (1976)
 
 
 [3]
 The Act defines "employee" as any individual employed in an agency, with the exception of
 (i) an alien or noncitizen of the United States who occupies a position outside the United States;
 (ii) a member of the uniformed services;
 (iii) a supervisor or a management official;
 (iv) an officer or employee in the Foreign Service of the United States employed in the Department of State, the International Communication Agency, the United States International Development Cooperation Agency, the Department of Agriculture, or the Department of Commerce; or
 (v) any person who participates in a strike in violation of section 7311 of this title.
 5 U.S.C. Sec. 7103(a)(2).
 
 
 [4]
 "Agency" is defined as
 an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Veterans' Administration), the Library of Congress, and the Government Printing Office, but does not include--
 (A) the General Accounting Office;
 (B) the Federal Bureau of Investigation;
 (C) the Central Intelligence Agency;
 (D) the National Security Agency;
 (E) the Tennessee Valley Authority;
 (F) the Federal Labor Relations Authority; or
 (G) the Federal Service Impasses Panel.
 5 U.S.C. Sec. 7103(a)(3).
 
 
 [5]
 These provisions of the Civil Service Reform Act were an outgrowth of Executive Order No. 11,491. The Federal Labor Relations Council, predecessor to the Federal Labor Relations Authority, had determined that Executive Order No. 11,491 required the VA to negotiate with Title 38 professional employees unless the VA established a compelling agency need for barring such negotiations. See American Federation of Government Employees, Local 1739 and Veterans Administration Hospital, Salem, Virginia, 6 FLRC 208, 210-17 (1978)
 
 
 [6]
 As of November, 1980, the nationwide American Federation of Government Employees bargaining unit of VA professional employees represented 13,455 employees. Office of Labor-Management Relations, U.S. Office of Personnel Management, Union Recognition in the Federal Government 476 (1980) (hereafter Union Recognition)
 
 
 [7]
 The record does not reveal precisely how many local agreements article 4 applies to. Information from the Office of Labor-Management Relations suggests that 43 certified bargaining units of Title 38 professional employees were covered by a collective bargaining agreement as of November, 1980. Union Recognition, at 475-93
 
 
 [8]
 The Senate Report reflects that Title 38 employees had not been granted the administrative waiver from these provisions which Congress had been led to expect would be granted. S.Rep. No. 96-747 at 55-57, reprinted in 1980 U.S.Code Cong. & Admin.News at 2493-95. See also H.R.Rep. No. 96-958, 96th Cong. 2d Sess. 10 (1980). Because Congress believed that removing the top positions from the Title 38 career system and placing them in the Senior Executive Service would be unwise, both the House and Senate bills contained specific provisions exempting Title 38 employees from the provisions of the Civil Service Reform Act relating to the Senior Executive Service. See id.; Explanatory Statement of Compromise Agreement on H.R. 7102/S. 2534, 1980 U.S.Code Cong & Admin.News 2557, 2561
 
 
 [9]
 Section 7121 requires that all collective bargaining agreements provide a procedure for the settlement of grievances, which must culminate in binding arbitration whenever the parties are unable to resolve their differences. 5 U.S.C. Sec. 7121. Section 7121(e) provides that "matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both." Id. Sec. 7121(e)
 
 
 [10]
 The Senate Report indicated that section 7121 of the Civil Service Reform Act provided employees under other personnel systems with an option where disagreements relating to demotion or removal were concerned. The Report specifically mentioned that employees under the Title 38 personnel system were "employees covered by this subchapter," who would have such an alternative available. S.Rep. No. 95-969, 95th Cong. 2d Sess. 110 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 2723, 2832
 
 
 [11]
 The specialty positions referred to in article XII were desirable positions because nurses in these positions usually were scheduled for one shift per day, from 9:00 a.m. to 5:00 p.m. The union sought to protect the right of its members to apply for and obtain these positions if they were the best qualified for the job
 
 
 [12]
 The VA argues its current position regarding the effect of the DM & S statute is "of long standing," even though it chose not to advance it by appealing contrary FLRC and FLRA decisions and even though it has previously conceded that Civil Service Reform Act provisions generally apply to Title 38 employees. The FLRA admits that its current position represents a change in its long-standing interpretation of the Civil Service Reform Act, a change which the FLRA contends was prompted by its review and consideration of the Colorado Nurses decision
 Both agencies properly submit that they are, in any case, not bound by prior policy, and we agree that ordinarily we would defer to an agency's construction of a statute it is charged with administering, even when that construction represents a departure from past practice, so long as the agency's construction is reasonable. See Fort Stewart Schools v. FLRA, --- U.S. ----, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990); NLRB v. Curtin Matheson Scientific, Inc., --- U.S. ----, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990). Where, however, we are presented with issues relating to the reconciliation of two statutory schemes, one of which is outside an agency's area of expertise, no particular deference is required. See Colorado Nurses, 851 F.2d at 1488; State of Nebraska, Military Department, Office of the Adjutant General v. FLRA, 705 F.2d 945, 947-48 (8th Cir.1983).
 
 
 [13]
 Pursuant to the 1988 Department of Veterans Affairs Act, all statutory references to the "Administrator" are now deemed to refer to the Secretary of the Department of Veterans Affairs. Department of Veterans Affairs Act, Pub.L. No. 100-527, Secs. 2, 10, 102 Stat. 2635, 2641 (1988)
 
 
 [14]
 The union argues that the collective bargaining provisions of Title 5 are not provisions "pertaining to the civil service system" and hence section 4119 does not apply to the cases before the Court. The VA Minneapolis court applied section 4119 to resolve the conflict between the collective bargaining provisions of Title 5 and the DM & S statute, however, and thus implicitly rejected this argument
 
 
 [15]
 During floor debate, Rep. Scrivener explained the reason for what is now section 4108 as follows:
 [W]e know that people do not get sick by the clock. We found that in many of these hospitals under civil-service regulations and under the wage-hour law and other regulations doctors practice 40 hours a week. As we have gone through hospitals and seen 4:30 come around, we have seen doctors put on their hats and walk out, because if they had worked a few minutes overtime, compensatory time would have had to be given them, and it would have taken a great deal of complicated figuring and bookkeeping to straighten it out. In [section 4108] we provided that notwithstanding any law, Executive order, or regulation, the Administrator shall prescribe by regulation the hours and conditions of employment and leaves of absence of doctors, dentists, and nurses.
 
 
 [91]
 Cong.Rec. 11,662-63 (1945)
 
 
 [16]
 Under the Civil Service Reform Act, any impasse in negotiations between agencies and unions is resolved by a Federal Service Impasses Panel. 5 U.S.C. Sec. 7119. The Act authorizes the Panel to take "whatever action is necessary and not inconsistent with this chapter to resolve the impasse," id. Sec. 7119(c)(5)(B)(iii), which may include forcing adoption of disputed proposals. See State of Nebraska, Military Department, Office of the Adjutant General, 705 F.2d at 950 n. 7
 
 
 [17]
 Johnson attempted to interpret article XII to require only that the VA post openings for "specialty positions," not that the VA hire the best qualified nurses for those positions. The ALJ rejected this interpretation, which is plainly contrary to the express language of article XII. The ALJ also rejected the VA's Privacy Act defense. Neither of these rulings is questioned on appeal
 
 
 [18]
 The Act defines "collective bargaining agreement" as "an agreement entered into as a result of collective bargaining pursuant to the provisions of this chapter." 5 U.S.C. Sec. 7103(a)(8). "Collective bargaining" is further defined as "the performance of the mutual obligation of the representative of an agency and the exclusive representative of the employees ... to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees." Id. Sec. 7103(a)(12)
 
 
 [19]
 Subdivision (a) of section 7106 reserves to agency management the authority to determine the mission, budget, organization, number of employees, and internal security practices of the agency. 5 U.S.C. Sec. 7106(a)(1). This subdivision also preserves management's right to hire, assign, lay off, discipline, and assign work to employees. Id. Sec. 7106(a)(2). Subdivision (b) provides:
 Nothing in this section shall preclude any agency and any labor organization from negotiating--
 (1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work.
 Id. Sec. 7106(b)(1) (emphasis supplied).
 
 
 [20]
 This is true both with respect to the collective bargaining provisions and the provisions establishing the Senior Executive Service. See S.Rep. No. 95-969, 95th Cong. 2d Sess. 110 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 2723, 2832 (noting Title 38 employees were covered by collective bargaining subchapter of Civil Service Reform Act); H.R.Rep. No. 96-958, 96th Cong. 2d Sess. 10 (1980) (citing Congressional opposition to Civil Service Reform Act on the ground that Title 38 employees would be included under the Act). See also 5 U.S.C. Sec. 7103(a)(3) (defining "agency" specifically to include Veterans' Canteen Service in the VA and listing numerous exclusions other than the VA)